CHATEAU X, INC., a South Carolina Corporation; ATLA THEATERS, INC., a South Carolina Corporation; JAMES RUSS, individually and in his capacity as an officer of both Chateau X, Inc., and ATLA Theaters, Inc.; ALBERT PELOQUIN, individually and in his capacity as an officer of both Chateau X, Inc. and ATLA Theaters, Inc.; HECTOR RIQUELME, JR.; FREDERICK OLLIE BYROM; SUSAN RUPE; VICTOR STROOP; JIMMIE TUCKER HILL; DENISE TERRY LAMB; GEORGE JOHNSON; JOE HORNSBY; ROBERT JEROME SMITH; and a place of business known as Chateau X Theater and Bookstore, Highway 17 South, Jacksonville, North Carolina v. STATE OF NORTH CAROLINA, ex rel. WILLIAM H. ANDREWS, DISTRICT ATTORNEY FOR THE FOURTH DISTRICT OF NORTH CAROLINA

No. 83

(Filed 4 March 1981)

**Obscenity § 3; Nuisance § 10— moral nuisance statutes — constitutionality**

Since neither a fine nor imprisonment can be imposed upon a defendant in moral nuisance proceedings under G.S. Ch. 19 unless and until it has been judicially determined that he has sold or exhibited obscene matter, the "prior restraint" imposed by the moral nuisance statutes, if any, is neither more onerous nor more objectionable than a criminal sanction meted out after the fact of sale or exhibition and, therefore, is constitutionally permissible.

Justice MEYER took no part in the consideration or decision of this case.

Justice EXUM dissenting.

ON remand from the United States Supreme Court for consideration of this Court's prior decision, State ex rel. *Andrews v. Chateau X, Inc.*, 296 N.C. 251, 250 S.E. 2d 603 (1979), in light of *Vance v. Universal Amusement Co.*, 445 U.S. 308, 100 S. Ct. 1156, 63 L. Ed. 2d 413 (1980) (per curiam).

This case was argued as No. 23, Fall Term 1980.

*Attorney General Rufus L. Edmisten, by Senior Deputy Attorney General Andrew A. Vanore, Jr., Assistant Attorney General Marvin Schiller and I. Beverly Lake, Jr., for the State.*

*Bailey, Raynor & Erwin, by Frank W. Erwin, and Arthur M. Schwartz, P.C., for defendants.*

CARLTON, Justice.

I.

This action was instituted on 12 December 1977 by the State,

through William H. Andrews, District Attorney for the Fourth District, to declare the Chateau X Theater and Bookstore a nuisance under Chapter 19 of the North Carolina General Statutes and to permanently enjoin defendants, South Carolina corporations doing business in Jacksonville, North Carolina, and its officers and employees from "maintaining, using, continuing, owning or leasing said place known as Chateau X Theater and Bookstore . . . as a nuisance" and "any place in the State of North Carolina as a nuisance." The complaint alleged that defendants maintained the Theater for the purpose of illegal exhibitions and sales to the public of obscene and lewd films and publications as a regular and predominant course of business.

The trial was conducted on 4 January 1978 before Judge Small, who, by stipulation of the parties, sat without a jury. Although nineteen exhibits of films and magazines possessed for sale or shown by Chateau X were introduced into evidence, the trial judge viewed only two of them, State's Exhibit Number 15, a film entitled "Airline Cockpit," and State's Exhibit Number 3, a magazine called "Spread Your Legs." The parties mutually stipulated that all films and magazines listed in State's Exhibit Number 20, an inventory of materials found at Chateau X on 12 December 1977, "contain substantially similar material" as was contained in State's Exhibits Numbers 15 and 3. Defendants presented no evidence. It was stipulated, however, that had defendants testified, "the evidence would indicate that the motion pictures exhibited and the books distributed and sold were done (sic) to consenting adults . . . ."

The trial judge found that State's Exhibits Numbers 15 and 3 were obscene and, pursuant to the parties' stipulation, that the remainder of the nineteen films and magazines and all materials listed on the inventory were obscene. He found all the films and magazines to be nuisances and declared Chateau X to be a nuisance under Chapter 19 of our General Statutes and ordered that all materials listed on the inventory be confiscated and destroyed.[1] Defendants were enjoined from exhibiting or selling any item listed on the inventory, from possession for exhibition to the public any

---

[1]This portion of the trial court's judgment requiring confiscation and destruction of the obscene material was stayed pending appeal, and the defendants, their officers, agents and employees were enjoined from removing or destroying the material by order of Judge Small dated 13 January 1978.

other film in the future which appeals to the prurient interest in sex without serious literary, artistic, educational, political or scientific values and depicts:

(1) Persons engaging in sodomy, per os, or per anum,
(2) Enlarged exhibits of the genitals of male and female persons during acts of sexual intercourse, or
(3) Persons engaging in masturbation,

and from possessing for sale and selling lewd matter which constitutes a principal or substantial part of the stock in trade at a place of business consisting of magazines, books, and papers which appeal to the prurient interest in sex without the same values and which depict any of the three specific acts of sexual conduct listed above.

Both defendants and the State appealed from the trial court's judgment. On 8 May 1978 this Court granted the request of all parties, pursuant to G.S. 7A-31(b), to hear the case prior to its determination by the Court of Appeals. We affirmed the judgment of the trial court concluding, *inter alia*, that Chapter 19 of the General Statutes places the burden of proving obscenity on the State and that the portion of the trial judge's order enjoining the sale or exhibition of obscene matter which has not been judicially determined to be obscene, if it is a prior restraint, is a constitutionally permissible one because it is, in reality, nothing more than a personalized criminal statute.

Defendants sought further review of this case and on 25 April 1980 the United States Supreme Court granted their petition for a writ of certiorari, vacated our prior decision and remanded the cause to this Court "for further consideration in light of *Vance*." *Chateau X, Inc. v. Andrews*, 445 U.S. 947, 100 S. Ct. 1593, 63 L. Ed. 2d 782 (1980).

## II.

Our consideration of this cause on remand is limited to determining (1) whether the holdings of *Vance v. Universal Amusement Co.* are applicable to the case *sub judice*, and (2) if so, whether the principles enunciated in *Vance* require reversal or modification of our previous decision. We hold that *Vance* is inapplicable to the present case and, accordingly, reaffirm our previous decision by incorporating herein by reference the original opinion of this Court, reported at 296 N.C. 251, 250 S.E. 2d 603.

Chateau X v. Andrews

In *Vance,* the United States Supreme Court was confronted with the question of the constitutionality of a Texas public nuisance statute[2] which, *inter alia,* authorizes state judges, on the basis of a showing that obscene films have been exhibited in the past, to prohibit the future exhibition of motion pictures that have not yet been judicially determined to be obscene. The Supreme Court affirmed the United States Court of Appeals for the Fifth Circuit and held that the Texas statute in question was unconstitutional. The Court of Appeals read the statute as authorizing a prior restraint of indefinite duration on the exhibition of motion pictures without a final judicial determination of obscenity and without any guarantee of prompt review of a preliminary finding of probable obscenity. *Universal Amusement Co. v. Vance,* 587 F. 2d 159 (5th Cir. 1978). In holding the Texas statute unconstitutional the Supreme Court emphasized:

> that the regulation of a communicative activity such as the exhibition of motion pictures must adhere to more narrowly drawn procedures than is necessary for the abatement of an ordinary nuisance, and . . . that the burden of supporting an injunction against a future exhibition is even heavier than the burden of justifying

[2]The Texas statute provides:

Art. 4667. 4685-93 Injunctions to abate public nuisances

(a) The habitual use, actual, threatened or contemplated, of any premises, place or building or part thereof, for any of the following uses shall constitute a public nuisance and shall be enjoined at the suit of either the State or any citizen thereof:

(1) For gambling, gambling promotion, or communicating gambling information prohibited by law;

(2) For the promotion or aggravated promotion of prostitution, or compelling prostitution;

(3) *For the commercial manufacturing, commercial distribution, or commercial exhibition of obscene material;*

(4) For the commercial exhibition of live dances or exhibition which depicts real or simulated sexual intercourse or deviate sexual intercourse;

(5) For the voluntary engaging in a fight between a man and a bull for money or other thing of value, or for any championship, or upon result of which any money or anything of value is bet or wagered, or to see which any admission fee is charged either directly or indirectly, as prohibited by law.

Tex. Rev. Civ. Stat. Ann. art. 4667 (Vernon Supp. 1980) (emphasis added).

_____

Chateau X v. Andrews
_____

the imposition of a criminal sanction for a past communication.

445 U.S. at 315-16, 100 S. Ct. at 1160-61, 63 L. Ed. 2d at 420.

In *Vance*, appellee, an operator of an adult motion picture theater, brought a suit in federal district court for declaratory relief and an injunction seeking, in part,[3] to declare the Texas nuisance statute,[4] unconstitutional and to enjoin any action by the County Attorney under that statute. The district court concluded that the statute, when coupled with the Texas Rules of Civil Procedure governing injunctions, operated as an invalid prior restraint on the exercise of first amendment rights and held the statute to be unconstitutional.

The State of Texas appealed to the United States Court of Appeals for the Fifth Circuit, and a divided panel of that court reversed, concluding that "[b]ecause the injunction follows rather than precedes a judicial determination that obscene material has been shown or distributed or manufactured on the premises and because [the injunction's] prohibitions can apply only to *further* dealings with *obscene and unprotected* material," the injunction did not constitute a prior restraint. *Universal Amusement Co. v. Vance*, 559 F. 2d 1286, 1292 (5th Cir. 1977) (panel decision). The panel also concluded that the injunction procedure satisfied the procedural safeguards set forth in *Freedman v. Maryland*, 380 U.S. 51, 85 S. Ct. 734, 13 L. Ed. 2d 649 (1965),[5] because any temporary restraint entered pending final adjudication on the merits would be imposed

_____

[3]The suit also challenged the constitutionality of another Texas nuisance statute, Tex. Rev. Civ. Stat. Ann. art. 4666 (Vernon 1952). The district court found that statute to be unconstitutional as applied to obscenity, but the Court of Appeals for the Fifth Circuit reversed that holding and found that this statute was inapplicable. *Universal Amusement Co. v. Vance*, 587 F. 2d 159, 166-67 (5th Cir. 1978). Appellees did not appeal from that portion of the court's decision, and the constitutionality of Art. 4666 was not before the United States Supreme Court. 445 U.S. at 310 n. 1, 100 S.Ct at 1158 n. 1, 63 L. Ed. 2d at 416 n.1.

[4]Tex. Rev. Civ. Stat. Ann. art. 4667, *supra* note 2.

[5]The procedural safeguards enunciated by *Freedman* applicable to regulation of communicative activity are:

(1) The burden of proving that the material is beyond the purview of first amendment protection must rest on the censor or the party who is seeking to have the material banned.

by a judge instead of an administrative censor. *Universal Amusement Co. v. Vance*, 559 F. 2d at 1292-93. The judgment of the district court was reversed.

The Court of Appeals granted rehearing *en banc*, reversed the decision of the panel and held that Art. 4667(a) is unconstitutional. *Universal Amusement Co. v. Vance*, 587 F. 2d 159. The eight-member majority found the statute constitutionally objectionable in several respects: First, the Texas statute authorizes injunctions against the future exhibition of unnamed films and, thus, amounts to an impermissible prior restraint on materials not yet declared obscene. Second, under Texas procedure an obscenity case is treated no differently from any other civil case and there is no provision for a prompt review on the merits. The six-member dissent concluded that, as a practical matter, the injunction authorized by the Texas statute imposed no greater a prior restraint than a criminal obscenity statute and, thus, the statute must be constitutional.

On appeal, the Supreme Court limited its review to two questions: (1) whether an "obscenity injunction" under the Texas statute imposes no greater a prior restraint than any criminal statute, and (2) whether the fifth circuit erroneously held that no prior restraint of possible first amendment materials is constitutionally permissible.

With respect to the first issue, the Supreme Court concluded that the Texas statute did impose a greater, more onerous and more objectionable prior restraint than does a criminal statute because:

> [p]resumably, an exhibitor would be required to obey [the injunction] pending a review of its merits and would be subject to contempt proceedings even if the film is ultimately found to be nonobscene. Such prior restraints would be more onerous and more objectionable than the threat of criminal sanctions after a film has been exhibited, since nonobscenity would be a defense to any crimi-

---

(2) There must be a judicial determination as to whether the material constitutes protected expression.

(3) There must be a procedural guarantee of a prompt final judicial decision. 380 U.S. at 58-59, 85 S. Ct. at 738-39, 13 L. Ed. 2d at 654-55.

nal proceeding.

445 U.S. at 316, 100 S. Ct. at 1161, 63 L. Ed. 2d at 421. Justices White and Rehnquist, in dissent, disagreed with the majority's conclusion, arguing that because any injunction granted under the Texas statute would be phrased in terms of the *Miller v. California,* 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973),[6] definition of obscenity, an exhibitor could never be found in contempt for showing a nonobscene film. In response, the majority seemed to imply that, while this point is true with regard to *unnamed* obscene films, the Texas statute also allowed the entry of a temporary injunction prohibiting the exhibition of *specific named* films on the basis of a showing of probable success on the merits. Apparently, it was with regard to the *named* films that the majority found the Texas statute constitutionally infirm: "Even if it were ultimately determined that the [specifically named] film is not obscene, the exhibitor could be punished for contempt of court for showing the film before the obscenity issue was finally resolved." 445 U.S. at 312 n. 4, 100 S. Ct. at 1159 n. 4, 63 L. Ed. 2d at 418 n. 4.[7]

With regard to the second issue, the Supreme Court disagreed with appellant's contention that the Court of Appeals had held that there can never be a valid prior restraint on communicative activity. Instead, that Court viewed the lower court's opinion as holding only that the Texas statute, in combination with the state's procedural rules, was procedurally deficient and that it authorized prior restraints that are more onerous than is constitutionally permissible. Consequently, the Supreme Court did not reach the issue of

---

[6]In *Miller,* the Supreme Court formulated a new legal standard for obscenity, holding that the basic guidelines for the trier of fact are:

> (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

413 U.S. at 24, 93 S. Ct. at 2615, 37 L. Ed. 2d at 431 (citations omitted).

[7]The brief treatment of this issue in the per curiam opinion renders our task of determining the precise holding quite difficult. We proceed on what we believe is the most logical basis for the Supreme Court's conclusion that the Texas statute authorizes prior restraints more onerous and more objectionable than the threat of criminal sanctions, that stated above in the text.

whether there can ever exist a constitutionally permissible prior restraint of possible first amendment materials.

## III.

We now turn to a consideration of the North Carolina moral nuisance statutes in light of the *Vance* decision. As we read the pertinent portion of the *Vance* opinion, the Supreme Court held that the Texas statute, which admittedly authorized prior restraints of indefinite duration on the exhibition of materials that had not been finally adjudicated to be obscene, was unconstitutional because it authorized prior restraints more onerous and more objectionable than corresponding criminal sanctions. The vice of the Texas statute lay in the possibility that an exhibitor could be held in contempt for violating a temporary injunction by showing a film prior to a final judicial determination of obscenity even if the film were ultimately found to be non-obscene. As stated above, the United States Supreme Court has interpreted the Texas statute to allow a preliminary injunction against *unnamed* materials only if those materials come within the legal definition of obscenity and also to allow the injunction to issue against *named* materials. As to the former, presumably, obscenity would be an essential element required to be proved *before* the seller or exhibitor could be held in contempt; thus, as to the unnamed materials, nonobscenity would be a defense in a contempt proceeding and the injunction procedure is no more onerous than and, in practical terms, resembles a criminal sanction imposed after the fact of sale or exhibition. As to the *named* materials, however, the United States Supreme Court concluded that contempt could be premised merely upon the showing of these materials in violation of the express terms of the injunction, without regard to the character or content of the materials; thus, as to the named materials, mere exhibition or sale would constitute the violation without regard to the obscenity or nonobscenity of the subject matter. Nonobscenity would not be a defense to a contempt charge for showing or selling a material specifically named in the injunction. In this respect, the Supreme Court concluded, the Texas injunction procedure is more onerous than a criminal sanction and constitutes a constitutionally impermissible prior restraint.

In contrast to the statute construed in *Vance*, the moral nuisance proceedings authorized by Chapter 19 of our General Statutes permit no such vice. As we made clear in our prior decision in

this case, nonobscenity is *always* a defense to a contempt proceeding and in such an action the State has the burden of proving obscenity beyond a reasonable doubt:

> There is no significant difference procedurally in a criminal action for selling obscenity and in a contempt action for violation of an injunction. In both proceedings the defendant can always defend on the ground that the material is not legally obscene. The burden is on the State to prove obscenity beyond a reasonable doubt.

*State ex rel. Andrews v. Chateau X, Inc.*, 296 N.C. at 264, 250 S.E. 2d at 611 (citations omitted).

The constitutional challenge made on the initial appeal by the original defendants to the Chapter 19 proceeding was directed toward the constitutionality of a permanent injunction, one entered after a final judicial determination of obscenity. Although the above-quoted language was directed toward the permanent injunction, which can enjoin *specifically named* materials only after they have been found to be obscene, *see id.* at 255-56, 250 S.E. 2d at 606, and the issue presented in *Vance* concerning a temporary injunction was not under consideration, we deem this rule to be equally applicable in contempt actions brought for violation of a temporary injunction. Under our laws, therefore, no penalty, whether it be a fine or imprisonment,[8] can be imposed upon a defendant unless and until it has been judicially determined that he has sold or exhibited obscene matter. Because of this special procedural safeguard, the "prior restraint" imposed by our statutes, if any, is neither more onerous nor more objectionable than a criminal sanction meted out after the fact of sale or exhibition and, therefore, is constitutionally permissible.

Under our law, sellers and exhibitors of erotic material can be punished only for dealing in materials which are legally obscene and unprotected by the first amendment guarantee of freedom of speech. Since nonobscenity is *always* a complete defense to contempt actions, there is no possibility that anyone could be punished for dealing in constitutionally protected materials. Hence, our laws

---

[8] Violation of any injunction granted under the provisions of Chapter 19 constitutes contempt and is punishable by imposition of a fine of not less than $200 or more than $1,000, or by imprisonment in the county jail for not less than three or more than six months, or by both fine and imprisonment. G.S. § 19-4 (1978).

do not share the constitutional infirmities of Texas law, and the principles enunciated in *Vance* do not control the disposition of the case *sub judice.* We find nothing in *Vance* which requires us to depart in any way from our prior decision. Therefore, the prior decision of this Court, reported at 296 N.C. 251, 250 S.E. 2d 603, is hereby reaffirmed and incorporated by reference as part of the opinion of this Court on remand.

## IV.

Because we readopt the prior decision of this Court, the action of the trial court in all respects is, again,

Affirmed.

Justice MEYER took no part in the consideration or decision of this case.

Justice EXUM dissenting:

I dissent for the reasons given in my dissent to the Court's first opinion, 296 N.C. 251, 268, 250 S.E. 2d 603, 613 (1978), a position which I believe has been bolstered by *Vance v. Universal Amusement Co.*, 445 U.S. 308 (1980), and *Spokane Arcades, Inc. v. Brockett*, ____ F. 2d ____, No. 78-2369, slip op. (9th Cir. 1980). Both *Vance* and *Spokane Arcades* struck down state statutes which permitted injunctions against future "obscene" expressions. As construed by the majority in this Court's first opinion, a construction with which I then disagreed, our statute under attack permits precisely this kind of injunction.

The argument of the majority initially and in its second opinion is the same: An injunction against future "obscene" expressions has no greater chilling effect on protected expressions than criminal sanctions against "obscene" expressions which have been approved by the United States Supreme Court. As I noted in my original dissent, I thought that Court answered such an argument in *Near v. Minnesota*, 283 U.S. 697 (1931). If not, it clearly answered it in *Vance* when it said, 445 U.S. 315-16, "the burden of supporting an injunction against a future exhibition is even heavier than the burden of justifying the imposition of a criminal sanction for a past communication."

The majority relies on finely spun distinctions between the injunction dealt with in *Vance* and the one here being considered.

Perhaps these distinctions are sufficient to make a difference. I do not think so, because I read *Vance* more broadly than the majority chooses to.

*Vance* says that injunctions against future expressions are intrinsically different from criminal sanctions against past expressions. *One* reason given in *Vance* is that non-obscenity might not be a defense against a contempt proceeding for violation of a civil injunction. In other words, a defendant may engage in expression that violates the terms of the injunction but which is not in fact obscene. The dissenters in *Vance* noted, "[t]his conclusion is plainly wrong." 445 U.S. at 322. The majority here says that non-obscenity is always a defense against a contempt proceeding under our civil injunction statute because the injunction can apply only to materials which, by definition, are obscene.

Even if the dissenters in *Vance* and the majority here are correct on this point, this is not the *only* reason why injunctions against future expression are more onerous in light of the First Amendment than criminal sanctions against past expressions. First, as I noted in my original dissent, a criminal defendant is entitled to various procedural protections, *e.g.*, a jury trial, not available to an alleged civil contemner. Second, the state in a criminal obscenity prosecution is constitutionally required to prove not only that the particular material in question is obscene but that defendant knew of its obscenity at the time he dealt with it. *Ginsberg v. New York*, 390 U.S. 629 (1968); *Smith v. California*, 361 U.S. 147 (1959). "The Constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity." *Mishkin v. New York*, 383 U.S. 502, 511 (1966). No such proof of scienter, or *mens rea*, would be required in a civil contempt proceeding. The state as plaintiff would be required to prove only that defendant wilfully engaged in expressions prohibited by the injunction.