Roger **FEHLHABER, et al., Appellees,**

v.

**STATE OF NORTH CAROLINA, Edward W. Grannis, District Attorney for the 12th Judicial District of North Carolina, etc., et al., Appellants.**

No. 78–1112.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 8, 1981.

Decided April 15, 1982.

Thomas J. Ziko, Associate Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen., I. Beverly Lake, Jr., Marvin Schiller, Raleigh, N. C., on brief), for appellants.

William E. Seekford, Towson, Md., for appellees.

Before HAYNSWORTH, Senior Circuit Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

HAYNSWORTH, Senior Circuit Judge:

This is another skirmish in the battle of the purveyors of hard core pornography, seeking the protection of the precious values of the First Amendment, and legislative bodies, seeking to lend protection to other societal values supportive of morality and decorous communities. The North Carolina legislature chose the civil injunctive abatement route for control, a route with many hazards to successful negotiation, but, as now interpreted by the North Carolina Supreme Court, we think the North Carolina statute effectively survives First and Fourteenth Amendment analysis.

The plaintiffs in this action, operators of "adult book stores," sought a declaratory judgment that Chapter 19, Article 1 of the General Statutes of North Carolina, as enacted in 1977, is facially unconstitutional. In the district court there were numerous grounds of attack, *Fehlhaber v. State of North Carolina*, 445 F.Supp. 130 (E.D.N.C. 1978), most of which were resolved against the plaintiffs, but the district court found § 19–5's provision for an injunction invalid insofar as it applied to materials not yet judicially declared to be obscene. From that adverse decision North Carolina brought the case here, and that is the only question before us.

We held the appeal in abeyance pending resolution of the *"Chateau X"* litigation then pending in the Supreme Court of North Carolina. That court upheld the statute. *State of North Carolina Ex Rel. Andrews v. Chateau X Inc.*, 296 N.C. 251, 250 S.E.2d 603 (1979). The Supreme Court vacated that judgment, *Chateau X Inc. v. Andrews*, 445 U.S. 947, 100 S.Ct. 1593, 63 L.Ed.2d 782 (1980), and remanded for reconsideration in light of *Vance v. Universal Amusement Co.*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980). Upon reconsideration, the North Carolina Supreme Court concluded that the North Carolina statute did not have the deficiencies of the Texas statute struck down by *Vance*. It again concluded that the North Carolina statute was constitutional as applied in *Chateau X.* Apparently, no further review of that case has been sought in the Supreme Court of the United States.

While this appeal was thus held in abeyance, the North Carolina statute had been subjected to a limiting construction, and we have been given the advantage of the Supreme Court's analysis of a similar, but defective, statute in *Vance.*

With those advantages which the District Judge did not have, we conclude that the statute is not facially unconstitutional.

## I.

The North Carolina obscenity nuisance statute is directed to pictorial obscenity. It does not apply to written material, and it regulates commercial trafficking in obscene pictorial material only if the exhibition of obscene films is "a predominant and regular course of business" and if other obscene pictorial materials are "a principal or substantial part of the stock in trade." Thus the statute clearly does not apply to the operator of a newsstand carrying materials usually to be found in newsstands, in hotels and airline terminals, but who carries a magazine, an occasional issue of which might be challenged as obscene. As clearly, it does not apply to a book store, however salacious some of the written material in the books may be. By such means, the North Carolina legislature has confined its nuisance abatement authorization to theaters regularly showing pornographic films to adult audiences and to "adult book stores" with coin operated film projectors explicitly showing sexual activity or photographs or pictorial magazines showing similar activity, or two or three of them.

The "lewd matter" at which the statute is directed is defined in § 19–1.1(2) in the terms of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), but with additional explicit limitations. It provides:

(2) "Lewd matter" is synonymous with "obscene matter" and means any matter:

(a) Which the average person, applying contemporary community standards, would find, when considered as a whole, appeals to the prurient interest; and

(b) Which depicts patently offensive representations of:

1. Ultimate sexual acts, normal or perverted, actual or simulated;

2. Masturbation, excretory functions, or lewd exhibition of the genitals or genital area;

3. Masochism or sadism; or

4. Sexual acts with a child or animal. Nothing herein contained is intended to include or proscribe any writing or written material, nor to include or proscribe any matter which, when considered as a whole, and in the context in which it is used, possesses serious literary, artistic, political, educational, or scientific value.

By § 19–1.2 prohibited nuisances are defined to be any place where lewd films are publicly exhibited as a predominant and regular course of business and a place of business in which lewd publications constitute a principal or substantial part of the stock in trade. Lewd films and lewd publications possessed for commercial exhibition or sale in any such place are also made nuisances, but only if possessed at a place which is a nuisance.

Other relevant provisions of the statute may be described in the language of the district court:

To instigate enforcement under the statute, the attorney general or a local district attorney (Section 19–2.1) is authorized to file in superior court a verified complaint alleging the facts constituting the nuisance (Section 19–2.2). Application for a preliminary injunction may be made by the state, with a hearing held on the motion within ten days of filing (Section 19–2.2).

If an application for a preliminary injunction is made, the court is authorized to issue an ex parte temporary restraining order, solely for the purpose of preserving the evidence (Section 19–2.3). The order may not restrict the distribution of any of the stock in trade, but the defendant is required from the time of service to keep a full accounting of all transactions in materials alleged in the complaint to be obscene (Section 19–2.3). Furthermore, the defendant may at any time after issuance move for the dissolution of the temporary restraining order. Such motion shall be heard within twenty-four hours of filing, with the burden remaining on the state to justify its continuance (Section 19–2.3, ¶ 2). If, following the hearing on the preliminary injunction, the court determines that the allegations are true, a preliminary injunction is required to issue restraining the defendant from continuing the nuisance pendente lite (Section 19–2.5).

Section 19–2 of the statute awards the permanent hearing priority on the docket over virtually all other civil matters; if the existence of a nuisance is established, the court is directed to enter an order of abatement to "perpetually enjoin the defendant and any other person from further maintaining the nuisance at the place complained of, and the defendant from maintaining such nuisance elsewhere within the jurisdiction of this State." (Section 19–2). "Such order may also require the effectual closing of the place against its use thereafter for the purpose of conducting any such nuisance." (Section 19–5, ¶ 2).

A defendant against whom an abatement injunction is entered may be ordered to pay damages equal to his gross income received, after entry of a preliminary injunction, from the sale or distribution of books or movies determined to be lewd. He may also be liable for court costs and reasonable attorney's fees (Section 19–6).

The basic statutory scheme is that one accused of operating a nuisance by the exhibition or sale of lewd materials should have a fullfledged civil trial during which he ran no risk of the imposition of a criminal penalty. The statute expressly provides for a jury if the defendant wants one. An abatement injunction would issue if the jury found that the exhibition of lewd films was a predominant and regular course of business or if other obscene pictorial material was a principal or substantial part of his stock in trade. If a temporary restraining order had been issued, he might be held accountable for interim receipts from the sale or exhibition of obscene pictorial materials, but no other penalty could be imposed.

While there is a provision for a preliminary injunction, there is a provision for the advancement of the trial on the merits to the hearing on the motion upon the motion of either party. Section 19–2.4.

After an abatement injunction has issued, a defendant is subject to trial on a contempt charge for a violation of the injunction, but upon a finding of a violation, he is subject to a penalty of a fine of no less than $200 nor more than $1,000 or by imprisonment in the county jail for no less than three nor more than six months. Section 19–4.

The statute itself, however, leaves unclear several questions, including the nature of the burden of persuasion resting upon the state during the abatement proceeding and during any contempt proceeding, whether the exhibition or sale of a single item would support a finding of contempt and whether a finding of contempt might be sustained without a final judicial determination that the materials forming the basis of the contempt charge were, in fact, obscene. By interpretation, the Supreme Court of North Carolina has supplied answers to these questions.

II.

*Andrews v. Chateau X Inc.*, 296 N.C. 251, 250 S.E.2d 603 (1979), considered an injunction by a superior court under Chapter 19. The state had appealed, contending that the injunction did not go far enough, while the defendants appealed, complaining that it went too far. In that case the trial judge had viewed a motion picture entitled "Airline Cockpit" and a magazine entitled "Spread Your Legs." Similar films and magazines were introduced as exhibits, and the parties had stipulated that the entire inventory of the store depicted comparable photographic material. On this basis, the trial judge found that the entire inventory was obscene, and it was depicted by the North Carolina Supreme Court as being "hard core pornography."

The injunction issued by the superior court was not simply cast in the statutory terms of prohibition. It undertook to make more specific the sexual acts within the reach of the injunction against pictorial display. The state complained that the injunction prohibited enlarged exhibits of male and female genitalia in sexual contact while the statute, contended the state, reached any obscene exhibit. The North Carolina Supreme Court rejected the state's contention, holding that it was the duty of the

trial judge to exercise the discretion vested in him so as to make the injunction as specific as possible, the better to inform the defendants what was prohibited and what was not.

The superior court injunction, against the future sale of obscene material, was specifically subjected to the statutory limitation that such material be "a principal or substantial part of the stock in trade." The state contended that it should run against any sale. The North Carolina Supreme Court rejected that contention. Under the statute, the selling of obscene pictorial material is not a nuisance unless that material constitutes a principal or substantial part of the stock in trade. When that condition is met, every item of obscene material is declared by the statute to be a nuisance, but an injunction may only prohibit continuation of the nuisance, or its resumption. Thus, isolated sales of obscene pictorial material will not violate the injunction; the injunction will be violated by sales only when the prohibited material constitutes a substantial part of the stock in trade. The limitation is required by the statute.

The Supreme Court of North Carolina held that a question as to whether § 19–5 might be construed as authorizing a complete closure of a store found to have been a nuisance was not properly before it, but held that such a closure could not be constitutionally effected. It viewed such a closure as a prior restraint, and held that the injunction was properly limited to later commercial conduct constituting a nuisance under the statute.

On their appeals, the defendants complained that the statute placed the burden of proof that the material lacked redeeming literary, artistic, political, educational or scientific value upon them. On appeal, the defendants did not contest the finding that all of the items for display or sale in the store were obscene, but earlier they had leveled a facial attack upon the statute upon that ground. The North Carolina Supreme Court construed the statute and placed upon the state the burden of proving

beyond a reasonable doubt all elements of the offense, including the absence of such redeeming value.

The defendant complained that the injunction did not expressly limit its reach to material that was patently offensive. The North Carolina Supreme Court rejected that contention, holding that inclusion of terms adequately defined in the statute limited its reach to patently offensive material. Indeed, it held that the injunction could not reach material that was not legally obscene, the sale of which could constitutionally be subjected to criminal sanctions.

Finally, the North Carolina Supreme Court held that any contempt citation upon an alleged violation of the injunction was not subject to North Carolina's summary contempt disposition procedures, but only to the state's plenary procedures, during which the state must shoulder the burden of proof of all elements of the offense beyond a reasonable doubt. It viewed the statutory contempt procedure as being a criminal contempt proceeding. It viewed the absence of a provision for a jury trial in the contempt proceeding [1] as permissible since the authorized penalty may not exceed a fine of $1,000 or imprisonment in the local jail for no more than six months, or both.

Its conclusion, of course, was that the statute was constitutional facially and as applied in *Chateau X.*

While a petition for a writ of certiorari in *Chateau X* was pending, the United States Supreme Court decided *Vance v. Universal Amusement Co.*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980), dealing with a somewhat similar statutory scheme in Texas, which a majority of the members of the Supreme Court found defective. It then vacated the judgment of the North Carolina Supreme Court and remanded *Chateau X* for further consideration in the light of *Vance. Chateau X Inc. v. Andrews*, 445 U.S. 947, 100 S.Ct. 1593, 63 L.Ed.2d 782 (1980).

On reconsideration, the North Carolina Supreme Court concluded that the North

---

1. The statute expressly provides a right to a jury trial in the injunctive proceeding.

Carolina statute did not have the defects of the Texas statute. It read *Vance* as invalidating the Texas statute as authorizing prior restraints of indefinite duration on the exhibition of motion pictures that had not been finally adjudicated obscene and, at least with respect to named films, as making an exhibitor subject to contempt proceedings even though the named films might be finally adjudicated as not obscene. It reaffirmed its earlier conclusion that North Carolina's authorized restraints upon subsequent maintenance of an obscene nuisance were constitutional.

### III.

We agree with North Carolina's reading of *Vance* and that the North Carolina statute does not contain the Texas defects.

Section 19–2.3 authorizes a temporary restraining order designed to prevent the removal of evidence. Removal of the inventory of allegedly obscene items may be restrained. Sales in the ordinary course of business may not be restrained, but records of such transactions may be required to be kept. Sections 19–2.4 and 19–2.5 together authorize a preliminary injunction, but the second paragraph of § 19–2.4 authorizes the court to advance the trial on the merits to the hearing on the motion. In any event, under § 19–3, the trial on the merits must be held at the next term of court following the filing of the complaint. It is given priority over all other civil cases, except election contests or other injunction cases. Thus, no preliminary restraints of indefinite duration are authorized. Moreover, there can be no finding of contempt until the state has proven beyond a reasonable doubt that the defendant subsequently has operated a prohibited nuisance, a commercial enterprise in which at least a substantial part of the business is the exhibition or sale of obscene material.

Indeed, North Carolina's approach to the problem is gentler than the imposition of ordinary criminal sanctions. During the injunctive proceeding, the state must prove beyond all reasonable doubt all the elements of an offense upon which it could visit penal sanctions. The defendant is entitled to a jury trial, if he wants it. Undoubtedly, the proprietor of *Chateau X* could have been sent to prison, had North Carolina chosen that route. Instead, at that stage, it imposes no penal sanction upon him. It contents itself with telling him, "you have violated the law; go and sin no more."

While under the constraint of the injunction, a defendant is perfectly free to operate a legitimate business. He may sell pictorial and other magazines. So long as he stocks the kind of magazines usually to be found on news and magazine stands, he need not be concerned that an occasional item might be found to be obscene. He need not refuse to carry *Hustler*, for even if a particular issue of that magazine should be found obscene in another context, he would not be guilty of a violation of the injunction, with more explicitly defined restraints and with the limitation that his business may not be found to be a violating nuisance unless a substantial part of his inventory is prohibited material.

Thus, a defendant under an injunction need have no fear if he opens a traditional magazine stand in a hotel. If he reopens an "adult bookstore" and fills it with explicit displays of sexual activity altogether comparable with the materials for the sale of which he has already been found to be in violation of the law, the fact that different couples were performing does not detract from the adequacy of his forewarning.

Blackstone's famous dictum against prior restraints upon public speech [2] is a prologue to our constitutional rule exemplified by *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). It is founded upon the notion that one may not know what one will say before he speaks or what a writer will write before he publishes. It is the embodiment of the principle that the free exchange of ideas will contribute to a distillation of truth. But *Near*, as Blackstone, was concerned with restraints upon

**2.** 4 Bl.Comm. 151, 152.

the utterance of verbal or written words. It is with the articulation of ideas, the expression of social, economic or political comment that our constitutional rule, enthroned in the First Amendment, is primarily concerned. Explicit photographic portrayals of natural and deviant sexual activity stand upon a plain far below. They may carry some social message, but their potential contribution to the distillation of truth is negligible compared to that of the spoken and written word.

## IV.

All written material is excluded from the reach of the North Carolina statute. If any prior restraint is ever justified, the area of pictorial obscenity is the place. With all of the safeguards in the statute, as interpreted and applied by North Carolina's courts, we conclude that it meets federal constitutional requirements.

REVERSED.

JAMES DICKSON PHILLIPS, Circuit Judge, dissenting:

I share the majority's discomfiture that in this case the protection of precious first amendment values is being claimed by "purveyors of hard core pornography" rather than by the beleaguered political and social dissidents for whom its core protections were most surely designed. But I dissent from the decision that the frontiers of the protection do not reach so far as is here claimed. I think the front-line defenses of the first amendment must—for protection of those ultimate core values—be understood to lie this far from the core. More importantly, I believe that the Supreme Court has consistently so read the Framers' understanding and intention.

The majority opinion carefully and skillfully examines the workings of the North Carolina obscenity nuisance statute in an attempt to show its reasonableness and its substantial identity, in terms of practical effect, with the normal *in terrorem* effect of any general proscription of obscenity-re-

lated conduct by criminal statute. The key feature of this civil nuisance statute remains, however, the power it gives the state's courts to permanently enjoin, under peril of the contempt sanction, the sale or exhibition of materials that no judicial tribunal has yet determined to be obscene. The Supreme Court has never upheld such a statute. On the contrary, ever since *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), the Court has unfailingly distinguished between the chilling effect of prior restraints resulting from civil injunctions prohibiting the distribution of material not yet found to be outside first amendment protection and that resulting from the general *in terrorem* effect of criminal statutes prohibiting, under peril of criminal sanctions, distributions of the same material.

It is true that *Near* itself recognized that the protection against "previous restraints" is not "absolutely unlimited." The Court reasoned:

No one would question but that a government might prevent actual obstruction to its recruiting service or the publication of the sailing dates of transports or the number and location of troops. On similar grounds, the primary requirements of decency may be enforced against obscene publications. The security of the community life may be protected against incitements to acts of violence and the overthrow by force of orderly government.

283 U.S. at 716, 51 S.Ct. at 631 (footnote omitted). These examples of permissible restraint do not suggest, however, that the *Near* Court would have permitted an injunction against the unprotected publications without a prior determination that they divulged troop locations, or were obscene, or incited violence. Indeed, the Court cited *Near* when it struck down, just two terms ago, a Texas statute strikingly similar to the one under review here. *Vance v. Universal Amusement Co.*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980) (per curiam).[1] It reiterated that "the

---

1. Dissenting, Justice White, joined by Justice Rehnquist, would have upheld the Texas stat-

ute on the specific basis that it is "functionally

burden of supporting an injunction against a future exhibition is even heavier than the burden of justifying the imposition of a criminal sanction for a past communication." Id. at 315–16, 100 S.Ct. at 1160.

This heavy burden to which the *Vance* Court referred has so far been found satisfied only by injunctions against named materials judicially found to be obscene or by injunctions strictly limited temporally, *see, e.g., Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). Even then, such limited injunctions must comply with strict procedural safeguards, *see Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), including the requirement that "[a]ny restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution." 380 U.S. at 59, 85 S.Ct. at 739. The statute here challenged has, in the final analysis, neither of these saving features.

Other courts of appeals have been similarly concerned to maintain the prior restraint line precisely at this point of distinction between the permanent civil injunction directed at material not specifically adjudicated obscene and the general prohibitions of obscenity by criminal statutes. The former involves an inherently vague command whose *in terrorem* effect is not ameliorated by the full procedural safeguards known by citizens to stand between them and imposition by the state of its criminal sanctions. *See, e.g., Spokane Arcades, Inc. v. Brockett*, 631 F.2d 135 (9th Cir. 1980) (relying on the Supreme Court decision in *Vance* to strike down a Washington state statute substantially similar to the North Carolina statute), *summarily aff'd,* —— U.S. ——, 102 S.Ct. 557, 70 L.Ed.2d 468 (1981); *Universal Amusement Co. v. Vance*, 587 F.2d 159 (5th Cir. 1978) (en banc), *aff'd,* 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980). The pre-

cise shortcomings of the North Carolina statute in these critical respects have been ably articulated by the district court below, 445 F.Supp. 130 (1978), and by Justice Exum in his well reasoned dissents in the two *Chateau X* cases, *State ex rel. Andrews v. Chateau X, Inc.,* 296 N.C. 251, 268, 250 S.E.2d 603, 613 (1979); and *Chateau X, Inc. v. State ex rel. Andrews,* 302 N.C. 321, 330, 275 S.E.2d 443, 449 (1981).

The majority attempts finally to distinguish *Near*, the patriarch case, as involving verbal political speech as opposed to pictorial non-political speech. Though all must concede that political speech is at the heart of the first amendment protections, *see generally* A. Meiklejohn, *Free Speech and Its Relation to Self Government* (1948), the Supreme Court has consistently applied the *Near* doctrine to the obscenity area in general and, in particular, has relied upon *Near* as support for striking down the prior restraint of motion pictures. *See, e.g., Vance; Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 501, 72 S.Ct. 777, 780, 96 L.Ed. 1098 (1952) ("It cannot be doubted that motion pictures are a significant medium for the communication of ideas .... The importance of motion pictures as an organ of public opinion is not lessened by the fact that they are designed to entertain as well as to inform."). Since the Supreme Court has declined to limit the *Near* doctrine to verbal political speech, I think we may not appropriately rely upon this distinction to save the statute in question.

In summary, until the Supreme Court affirmatively pulls back the perimeter defense line against prior restraints which, since *Near*, has not been held to permit intrusions past those made by criminal statutes and civil injunctions of quite short duration, I think we should continue to enforce that clearly recognizable line as the authoritatively established one. I doubt that the ultimate values at stake can be

indistinguishable from a criminal obscenity statute," 445 U.S. at 324, 100 S.Ct. at 1165, that criminal prohibitions of obscenity are clearly compatible with the first amendment, and thus, the obscenity injunction statute is likewise con-

stitutional. This position was, however, expressly rejected by a five-member majority opinion. See 445 U.S. at 316 & n. 13, 100 S.Ct. at 1161 & n. 13.

protected over the long haul by defenses drawn in more closely or made more flexible, and I read the controlling Supreme Court decisions as reflecting exactly that judgment about the intended reach of first amendment protections in this troublesome realm.

I would affirm the judgment of the district court.