CINEMA I VIDEO, INC. D/B/A CINEMA I VIDEO, SUNSHINE VIDEO, INC. D/B/A
SUNSHINE VIDEO, HOME VIDEO, INC. D/B/A HOME VIDEO, PHILLIP J.
RINK AND DOUGLAS HONEYCUTT D/B/A HOME VIDEO, THE VIDEO
GALLERIES, INC. D/B/A THE VIDEO GALLERY, L & J ELECTRONIC,
INC., D/B/A L & J ELECTRONICS, PIZZA KEG, INC. D/B/A SHOWBIZ,
VIDEO TIME, INC. D/B/A VIDEO TIME, ANDRE, INC. D/B/A AUDIO VIDEO
MART, THE VIDEO BAR, INC. D/B/A THE VIDEO BAR, THE VIDEO BAR,
INC. AND A & N, INC. D/B/A THE VIDEO BAR, THE VIDEO BAR, INC. AND
VIDEO BAR EAST D/B/A THE VIDEO BAR, JIM ALLEN, INC. NORTH
CAROLINA VIDEO, INC. D/B/A NORTH CAROLINA VIDEO, MULTI-VIDEO,
INC. D/B/A MULTI-VIDEO, VIDEO COUNTRY CORP. D/B/A VIDEO COUN-
TRY, RONALD CRAMER D/B/A VIDEO 99 AND VIDEO SEARCH, PIC-A-
FLICK OF SHELBY, INC. D/B/A PIC-A-FLICK, PIC-A-FLICK OF GASTONIA
INC. D/B/A PIC-A-FLICK, JOY GALLYON, RONNIE McLELLAND AND
PAUL McLELLAND D/B/A EAST SIDE MOVIES, JOY GALLYON AND TOM
FOX D/B/A BROADWAY MOVIES, JOHN D. McLAUCHLIN AND BUTCH
LUCAS D/B/A VIDEO STATION OF FAYETTEVILLE, N.C., JOHN D.
McLAUGHLIN, THURMAN LUCAS, E. SCOTT McLAUCHLIN AND JOHN
D. McLAUCHLIN, III D/B/A VIDEO STATION OF CLINTON, N.C., C. H. Mc-
CUBBIN, J. A. McCUBBIN AND PHYLLIS SMITH D/B/A VIDEO SHOWCASE,
LES CAILLOUET D/B/A VIDEO WORLD OF GREENSBORO, CHRISTINE T.
BREWER D/B/A BREWER'S MOVIE CLUB, TONY G. McDOWELL D/B/A
GREAT ESCAPES VIDEO TAPE CLUB, LEE ROY JOHNSON D/B/A TROUT-
MAN VIDEO, JIMMY E. HUFF D/B/A STAR VIDEO, JOHN ALLEN D/B/A
PRIME TIME VIDEO, BILLY E. OVERMAN D/B/A ALL STAR HOME
VIDEO, JIMMY DEAN WRIGHT D/B/A SHOWCASE VIDEO CLUB, CLEN-
TON J. SMITH D/B/A VIDEO WAY, DAVID M. MAGILL D/B/A SILVER
SCREEN VIDEO, VIDEO CITY OF RALEIGH, INC. D/B/A VIDEO CITY v.
LACY H. THORNBURG, ATTORNEY GENERAL OF THE STATE OF NORTH
CAROLINA, ROBERT E. THOMAS, DISTRICT ATTORNEY FOR THE TWENTY-FIFTH
JUDICIAL DISTRICT OF NORTH CAROLINA, GEORGE E. HUNT, DISTRICT AT-
TORNEY FOR THE FIFTEENTH JUDICIAL DISTRICT OF NORTH CAROLINA, JOHN W.
TWISDALE, DISTRICT ATTORNEY FOR THE ELEVENTH JUDICIAL DISTRICT OF
NORTH CAROLINA, D. LAMAR DOWDA, DISTRICT ATTORNEY FOR THE EIGHT-
EENTH JUDICIAL DISTRICT OF NORTH CAROLINA, DAVID McFAYDEN, JR.,
DISTRICT ATTORNEY FOR THE THIRD JUDICIAL DISTRICT OF NORTH CAROLINA, ED-
WARD W. GRANNIS, JR., DISTRICT ATTORNEY FOR THE TWELFTH JUDICIAL
DISTRICT OF NORTH CAROLINA, PETER S. GILCHRIST, III, DISTRICT ATTORNEY
FOR THE TWENTY-SIXTH JUDICIAL DISTRICT OF NORTH CAROLINA, PHILLIP
WALTERS ALLEN, DISTRICT ATTORNEY FOR THE SEVENTEENTH (A) JUDICIAL
DISTRICT OF NORTH CAROLINA, H. W. ZIMMERMAN, JR., DISTRICT ATTORNEY
FOR THE TWENTY-SECOND JUDICIAL DISTRICT OF NORTH CAROLINA, RONALD C.
BROWN, DISTRICT ATTORNEY FOR THE TWENTY-EIGHTH JUDICIAL DISTRICT OF
NORTH CAROLINA, W. HAMPTON CHILDS, JR., DISTRICT ATTORNEY FOR THE
TWENTY-SEVENTH (A) JUDICIAL DISTRICT OF NORTH CAROLINA, THOMAS D.
HAIGWOOD, DISTRICT ATTORNEY FOR THE THIRD JUDICIAL DISTRICT OF NORTH
CAROLINA, CARL FOX, DISTRICT ATTORNEY FOR THE FIFTEENTH (B) JUDICIAL
DISTRICT OF NORTH CAROLINA, DONALD JACOBS, DISTRICT ATTORNEY FOR THE
EIGHTH JUDICIAL DISTRICT OF NORTH CAROLINA, JOE FREEMAN BRITT,
DISTRICT ATTORNEY FOR THE SIXTEENTH JUDICIAL DISTRICT OF NORTH CAROLINA,

Cinema I Video v. Thornburg

WILLIAM H. ANDREWS, DISTRICT ATTORNEY FOR THE FOURTH JUDICIAL DISTRICT OF NORTH CAROLINA, JOSEPH G. BROWN, DISTRICT ATTORNEY FOR THE TWENTY-SEVENTH (A) JUDICIAL DISTRICT OF NORTH CAROLINA, JAMES E. ROBERTS, DISTRICT ATTORNEY FOR THE NINETEENTH (A) JUDICIAL DISTRICT OF NORTH CAROLINA, RONALD L. STEPHENS, DISTRICT ATTORNEY FOR THE FOURTEENTH JUDICIAL DISTRICT OF NORTH CAROLINA, HOWARD S. BONEY, JR., DISTRICT ATTORNEY FOR THE SEVENTH JUDICIAL DISTRICT OF NORTH CAROLINA, J. RANDOLPH RILEY, DISTRICT ATTORNEY FOR THE TENTH JUDICIAL DISTRICT OF NORTH CAROLINA

NORTH AMERICAN VIDEO, LTD. OF DURHAM, D/B/A NORTH AMERICAN VIDEO, NORTH AMERICAN VIDEO, LTD. OF RALEIGH D/B/A NORTH AMERICAN VIDEO, CHARLES H. CROW & ASSOCIATES, INC. D/B/A CROW'S VIDEO CENTER AND COMPUTER & VIDEO CENTER, VERNON S. CHURCH, JR. D/B/A HOME VIDEO OF WILKES, ABELIAN ENTERPRISES, INC., VIDEO WORLD, INC., MELVIN WAYNE CALDWELL D/B/A VIDEO SHOPPE, MICHAEL MYERS D/B/A U.S.A. VIDEO, BYRON E. TRIPLETT D/B/A VIDEO ONE, FERRELL DENNIS WITTE D/B/A VIDEO SHOWPLACE, PIC-A-FLICK OF ASHEVILLE, INC. D/B/A PIC-A-FLICK, W.S.J., INC. D/B/A VIDEO WORLD, JACK E. ELLIOTT D/B/A CITY NEWS VIDEO AND CITY VIDEO, JACK E. ELLIOTT, JANE STRAUS, RACHEL GUINN AND GLORIA GUINN D/B/A JACKIE'S VIDEO, VIDEO WORLD OF SHELBY, INC. D/B/A VIDEO WORLD, VIDEO WORLD OF CHERRYVILLE, INC. D/B/A VIDEO WORLD, RALPH D. CUNNINGHAM D/B/A HOME MOVIE RENTAL, AMERICAN VIDEO, INC. D/B/A ALL AMERICAN VIDEO, D/B/A ALL AMERICAN VIDEO, J.J.L. ENTERPRISES, INC. D/B/A VIDEO CONNECTION, THOMAS C. DUNLAP, SR. AND TRACY C. DUNLAP, SR. D/B/A THE VIDEO STATION, BOBBY JOE BRADLEY D/B/A HOME VIDEO CENTER, DUNCOURT, INC. D/B/A THE VIDEO CENTER, VON ENTERPRISES, INC. D/B/A VON'S HOME VIDEO MOVIES, VIDEO WORLD OF GASTONIA, INC. D/B/A VIDEO WORLD v. LACY H. THORNBURG, ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA, ROBERT E. THOMAS, DISTRICT ATTORNEY FOR THE TWENTY-FIFTH JUDICIAL DISTRICT OF NORTH CAROLINA, JOHN W. TWISDALE, DISTRICT ATTORNEY FOR THE ELEVENTH JUDICIAL DISTRICT OF NORTH CAROLINA, D. LAMAR DOWDA, DISTRICT ATTORNEY FOR THE EIGHTEENTH JUDICIAL DISTRICT OF NORTH CAROLINA, DAVID MCFAYDEN, JR., DISTRICT ATTORNEY FOR THE THIRD JUDICIAL DISTRICT OF NORTH CAROLINA, EDWARD W. GRANNIS, JR., DISTRICT ATTORNEY FOR THE TWELFTH JUDICIAL DISTRICT OF NORTH CAROLINA, PETER S. GILCHRIST, III, DISTRICT ATTORNEY FOR THE TWENTY-SIXTH JUDICIAL DISTRICT OF NORTH CAROLINA, PHILLIP WALTERS ALLEN, DISTRICT ATTORNEY FOR THE SEVENTEENTH (A) JUDICIAL DISTRICT OF NORTH CAROLINA, H. W. ZIMMERMAN, JR., DISTRICT ATTORNEY FOR THE TWENTY-SECOND JUDICIAL DISTRICT OF NORTH CAROLINA, RONALD C. BROWN, DISTRICT ATTORNEY FOR THE TWENTY-EIGHTH JUDICIAL DISTRICT OF NORTH CAROLINA, W. HAMPTON CHILDS, JR., DISTRICT ATTORNEY FOR THE TWENTY-SEVENTH (B) JUDICIAL DISTRICT OF NORTH CAROLINA, CARL FOX, DISTRICT ATTORNEY FOR THE FIFTEENTH (B) JUDICIAL DISTRICT OF NORTH CAROLINA, JOE FREEMAN BRITT, DISTRICT ATTORNEY FOR THE SIXTEENTH JUDICIAL DISTRICT OF NORTH CAROLINA, WILLIAM H. ANDREWS, DISTRICT

ATTORNEY FOR THE FOURTH JUDICIAL DISTRICT OF NORTH CAROLINA, JOSEPH G. BROWN, DISTRICT ATTORNEY FOR THE TWENTY-SEVENTH (A) JUDICIAL DISTRICT OF NORTH CAROLINA, JAMES E. ROBERTS, DISTRICT ATTORNEY FOR THE NINE-TEENTH (A) JUDICIAL DISTRICT OF NORTH CAROLINA, RONALD L. STEPHENS, DISTRICT ATTORNEY FOR THE FOURTEENTH JUDICIAL DISTRICT OF NORTH CAROLINA, MICHAEL A. ASHBURN, DISTRICT ATTORNEY FOR THE TWENTY-THIRD JUDICIAL DISTRICT OF NORTH CAROLINA, WILLIAM C. GRIFFIN, JR., DISTRICT ATTORNEY FOR THE SECOND JUDICIAL DISTRICT OF NORTH CAROLINA, GEORGE E. HUNT, DISTRICT ATTORNEY FOR THE FIFTEENTH (A) JUDICIAL DISTRICT OF NORTH CAROLINA, ALAN LEONARD, DISTRICT ATTORNEY FOR THE TWENTY-NINTH JUDICIAL DISTRICT OF NORTH CAROLINA, J. RANDOLPH RILEY, DISTRICT ATTORNEY FOR THE TENTH JUDICIAL DISTRICT OF NORTH CAROLINA

NORTH CAROLINA ASSOCIATION OF FAMILY ENTERTAINMENT CENTER, INC. v. LACY H. THORNBURG

PARKER NEWS, INC., A NORTH CAROLINA CORPORATION; JESSE F. FRYE, JR., D/B/A L & J NEWSTAND; BRIAR PATCH MOUNTAIN INVESTMENTS, INC., A CORPORATION; SUGAR & SPICE, INC., A NORTH CAROLINA CORPORA-TION; J & J VIDEO TAPE EXCHANGE, A PARTNERSHIP; SALISBURY VIDEO, A PARTNERSHIP; SALISBURY NEWS, A PARTNERSHIP; ETTA MAE MOTHERSHEAD, D/B/A R & R ENTERTAINMENT CENTER; DANAN ENTERPRISES, INC., A NORTH CAROLINA CORPORATION; ADULT TRADING POST, A PARTNERSHIP; W & S ENTERPRISES, LTD., A NORTH CAROLINA COR-PORATION; SHOW BIZ, A PARTNERSHIP; SHARON S. BUNDY, D/B/A VIDEO TRACS; ROBERT T. CADIEU, SR., D/B/A CATHY'S VIDEO, TOO; CATHY'S BOOK SWAP/VIDEO, A PARTNERSHIP; JACK ELLIOTT D/B/A CITY NEWS VIDEO; J, J & B ENTERPRISES, A NORTH CAROLINA CORPORATION; JOHNNY T. ALLEN, JR., D/B/A PRIME TIME VIDEO; EVELYN L. HATCHER, D/B/A L.A. VIDEO RENTALS; EMPIRE VIDEO, INC., A NORTH CAROLINA CORPORA-TION; W.S.J., INC., A NORTH CAROLINA CORPORATION; PIERRES OF WILM-INGTON, INC., A NORTH CAROLINA CORPORATION; H & H ENTERPRISES OF WILMINGTON, INC., A NORTH CAROLINA CORPORATION; MIND'S EYE, INC., A NORTH CAROLINA CORPORATION; CROWN VIDEO UNLIMITED, INC., A NORTH CAROLINA CORPORATION; CAMERA'S EYE, INC., A NORTH CAROLINA CORPORA-TION; AND BILL WILKERSON D/B/A XXX, INN v. LACY H. THORNBURG, ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA, JAMES E. ROBERTS, DISTRICT ATTORNEY FOR THE NINETEENTH (A) JUDICIAL DISTRICT OF NORTH CAROLINA, H. W. ZIMMERMAN, JR., DISTRICT ATTORNEY FOR THE TWENTY-SECOND JUDICIAL DISTRICT OF NORTH CAROLINA, GEORGE E. HUNT, DISTRICT ATTORNEY FOR THE FIFTEENTH (A) JUDICIAL DISTRICT OF NORTH CAROLINA, LAMAR DOWDA, DISTRICT ATTORNEY FOR THE EIGHTEENTH JUDICIAL DISTRICT OF NORTH CAROLINA, PETER S. GILCHRIST, III, DISTRICT ATTORNEY FOR THE TWENTY-SIXTH JUDICIAL DISTRICT OF NORTH CAROLINA, W. HAMPTON CHILDS, JR., DISTRICT ATTORNEY FOR THE TWENTY-SEVENTH (B) JUDICIAL DISTRICT OF NORTH CAROLINA, EDWARD W. GRANNIS, JR., DISTRICT AT-TORNEY FOR THE TWELFTH JUDICIAL DISTRICT OF NORTH CAROLINA, JERRY L. SPIVEY, DISTRICT ATTORNEY FOR THE FIFTH JUDICIAL DISTRICT OF NORTH

Cinema I Video v. Thornburg

CAROLINA, WILLIAM H. ANDREWS, DISTRICT ATTORNEY FOR THE FOURTH JUDICIAL DISTRICT OF NORTH CAROLINA, JOE FREEMAN BRITT, DISTRICT ATTORNEY FOR THE SIXTEENTH JUDICIAL DISTRICT OF NORTH CAROLINA, HOWARD S. BONEY, JR., DISTRICT ATTORNEY FOR THE SEVENTH JUDICIAL DISTRICT OF NORTH CAROLINA, DONALD M. JACOBS, DISTRICT ATTORNEY FOR THE EIGHTH JUDICIAL DISTRICT OF NORTH CAROLINA, J. RANDOLPH RILEY, DISTRICT ATTORNEY FOR THE TENTH JUDICIAL DISTRICT OF NORTH CAROLINA, W. DAVID McFAYDEN, JR., DISTRICT ATTORNEY FOR THE THIRD JUDICIAL DISTRICT OF NORTH CAROLINA, JOHN W. TWISDALE, DISTRICT ATTORNEY FOR THE ELEVENTH JUDICIAL DISTRICT OF NORTH CAROLINA

No. 8610SC269

(Filed 30 December 1986)

1. **Obscenity § 2— dissemination of obscenity—statute not unconstitutionally overbroad**

    The statute prohibiting the dissemination of obscenity, N.C.G.S. 14-190.1, is not unconstitutionally overbroad because the language "taken as a whole" does not appear in the third prong of the test for obscenity set forth in subsection (b)(3), that the material lacks serious literary, artistic, political, or scientific value, since the second prong of the test for obscenity set forth in subsection (b)(2), when considered in *pari materia* with subsection (b)(3), precludes an interpretation which would permit the trier of fact to determine obscenity of material on the basis of isolated depictions contained therein.

2. **Constitutional Law § 4; Obscenity § 1— constitutionality of obscenity statutes —standing of video dealers to challenge**

    Plaintiff video dealers have standing to challenge the constitutionality of the statute prohibiting the dissemination of obscenity, N.C.G.S. 14-190.1, and the statute creating the offense of first degree sexual exploitation of a minor, N.C.G.S. 14-190.16.

3. **Obscenity § 1— dissemination of obscenity—no prohibition of possession in home—statute not overbroad**

    The statute prohibiting the "dissemination" of obscenity, N.C.G.S. 14-190.1, does not prohibit the mere possession of obscenity in the privacy of one's own home and is not unconstitutionally overbroad.

4. **Obscenity § 1— intentional dissemination of obscenity—sufficient scienter requirement**

    The statute providing that it shall be unlawful for any person, firm or corporation to "intentionally" disseminate obscenity, N.C.G.S. 14-190.1(a), contains a constitutionally sufficient scienter requirement.

5. **Obscenity § 2— judging with reference to "especially susceptible audiences"— constitutionality**

    N.C.G.S. 14-190.1(d) is not unconstitutionally vague or overbroad because it permits obscenity to be judged with reference to "especially susceptible au-

diences" when the material was especially designed for or directed toward such audiences.

**6. Obscenity § 2— definitions of "sexual conduct" not vague or overbroad**

N.C.G.S. 14-190.1(c) is not unconstitutionally vague or overbroad in setting forth what constitutes "sexual conduct." Specifically, the statute is not vague or overbroad in defining sexual conduct to include "excretory functions" or to include the depiction of "torture, physical restraint by being fettered or bound, or flagellation of or by a nude person or a person clad in undergarments or in revealing or bizarre costume."

**7. Obscenity § 1— seized materials—absence of prompt adversary hearing on obscenity**

The absence of a right in N.C.G.S. 14-190.1 to an adversary hearing on the obscenity of seized material prior to trial does not constitute an unconstitutional prior restraint of First Amendment rights. The burden is on the person seeking return of the material to request such a hearing, and a defendant may make a motion to suppress the seized evidence under N.C.G.S. 15A-977.

**8. Obscenity § 1— sexual exploitation of minors—necessity for live minor**

When the statutes setting forth criminal offenses for the sexual exploitation of minors, N.C.G.S. 14-190.16 and 14-190.17, refer to drawings or visual representations of a minor, they are referring to a representation of a live person under eighteen years of age; therefore, the statutes do not impermissibly permit the State to prosecute a charge of dissemination of materials harmful to minors when the production of said material does not require the use of a live minor in violation of the First and Fourteenth Amendments to the U. S. Constitution.

**9. Obscenity § 1— sexual touching involving minors—statute not overbroad**

The statute proscribing depictions of apparent sexual touching involving minors, N.C.G.S. 14-190.13(5)(c), is not substantially overbroad. Moreover, whatever overbreadth may exist in the statute should be cured through a case by case analysis of fact situations to which its sanctions assertedly may not be applied.

**10. Obscenity § 1— sexual exploitation of minors—scienter requirement**

There is a scienter requirement in the statutes creating the offenses of first and second degree sexual exploitation of a minor, N.C.G.S. 14-190.16 and 14-190.17, and the proscriptions contained in the statutes do not constitute prior restraints.

**11. Obscenity § 1— sexual exploitation of minors—inference of minority—due process**

The inference of minority permitted by N.C.G.S. 14-190.16 and 14-190.17 does not relieve the State of its burden of proving beyond a reasonable doubt every essential element of the offenses of first and second degree sexual exploitation of a minor in violation of the due process clause of the Fourteenth Amendment to the U. S. Constitution and Art. I, sec. 19 of the N. C. Constitution.

**12. Obscenity § 1— sexual exploitation of minors—inference of minority—First Amendment rights**

The inference of minority permitted by N.C.G.S. 14-190.16 and 14-190.17 does not violate protections guaranteed by the First Amendment of the U. S. Constitution.

**13. Obscenity § 2— sexual exploitation of minors—visual representations—statutes not unconstitutionally vague**

The statute which makes it unlawful to disseminate material containing a "visual representation" of a minor engaged in sexual activity, N.C.G.S. 14-190.17, and the statute which includes "visual depictions or representations" in the definition of "material," N.C.G.S. 14-190.13(2), provide fair notice of their prohibitions and are not unconstitutionally vague.

Judge BECTON concurring in part and dissenting in part.

Judge COZORT concurs.

APPEAL by plaintiffs from *Bailey, Judge.* Judgment entered 10 January 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 28 August 1986.

This is a civil action wherein plaintiffs seek a declaratory judgment with respect to the constitutionality of the following statutes: G.S. 14-190.1, entitled "Obscene literature and exhibitions"; G.S. 14-190.13, entitled "Definitions for certain offenses concerning minors"; G.S. 14-190.16, entitled "First degree sexual exploitation of a minor"; and G.S. 14-190.17, entitled "Second degree sexual exploitation of a minor." On 11 July 1985, in the first session of 1985, the North Carolina General Assembly enacted House Bill 1171 entitled "AN ACT TO STRENGTHEN THE OBSCENITY LAWS OF THIS STATE AND THE ENFORCEMENT OF THESE LAWS, TO PROTECT MINORS FROM HARMFUL MATERIAL THAT DOES NOT RISE TO THE LEVEL OF OBSCENITY, AND TO STOP THE SEXUAL EXPLOITATION AND PROSTITUTION OF MINORS." House Bill 1171 amended, *inter alia,* G.S. 14-190.1, -190.13, -190.16, and -190.17 and repealed G.S. 14-190.2. The effective date of the amendments was 1 October 1985. On 30 September 1985, plaintiffs in case number 85CVS6750 (Cinema I Video) filed their complaint and motions for injunctive relief from the enforcement of the aforementioned statutes as amended by House Bill 1171. Plaintiffs alleged that because they "are in the business of selling and renting video tapes, including video tapes which are sexually explicit, they will be the target of defendants' intended enforcement of N.C.G.S. secs. 14-190.1, 14-190.13, 14-190.16 and 14-190.17." Plaintiffs

claimed that said statutes abridged their rights as protected by the First, Fifth, Eighth, Ninth and Fourteenth Amendments of the United States Constitution and Article I, sec. 27 of the Constitution of North Carolina. The Attorney General of the State of North Carolina, along with district attorneys for each judicial district of the State, were named as defendants in plaintiffs' complaint. Plaintiffs alleged, *inter alia*, that the amended statutes were vague in their terms, substantially overbroad, and that the impending enforcement of the statutes deprived them of their due process rights and deprived them and their customers of the free exercise of their rights as protected by the United States Constitution as well as the Constitution of North Carolina. Plaintiffs also averred, as irreparable injury, the severe financial loss or ruin and possible criminal prosecution of them pending a determination of the case on its merits.

On 2 October 1985, plaintiffs in case number 85CVS1796 (Parker News) filed a similar complaint in Wayne County Superior Court. On 3 October 1985, plaintiffs in case number 85CVS6850 (North American Video) filed their complaint in Wake County Superior Court also challenging the constitutionality of the statutes *sub judice*. Superior Court Judge Henry Barnette, Jr., of Wake County, in an order filed 3 October 1985, issued temporary restraining orders prayed for in case numbers 85CVS6750 and 85CVS6850, pending a hearing on plaintiffs' motions for preliminary injunctions. On 4 October 1985, Judge Barnette denied plaintiffs' motions for preliminary injunctions in case numbers 85CVS6750 and 85CVS6850. On 4 October 1985, plaintiffs filed with this Court petitions for a writ of certiorari, a writ of supersedeas, and a temporary stay. This Court denied plaintiffs' petitions.

On 23 October 1985, defendants filed their answers and motions for summary judgment in case numbers 85CVS6750 and 85CVS6850. On 1 November 1985, defendants filed their answer and motion for summary judgment in case number 85CVS1796. Plaintiffs in case number 85CVS1796, on 5 November 1985, filed a motion for summary judgment on their prayer for a permanent injunction. On 5 November 1985, plaintiffs' motion for summary judgment was denied. (85CVS1796).

On 15 November 1985, plaintiffs (North Carolina Family Entertainment Center, Inc.) in 85CVS8071 filed their complaint in Wake County Superior Court. By consent of the parties case numbers 85CVS1796 and 85CVS8071 were consolidated and on 5 December 1985 plaintiffs in case number 85CVS1796 made motions to remove and continue the case in Wake County. Also, on 5 December 1985, a motion was made pursuant to Rule 42, N.C. Rules Civ. P., to consolidate case numbers 85CVS1796, 85CVS6750 and 85CVS6850. On 20 December 1985, transfer of 85CVS1796 to Wake County was allowed; on 13 January 1986 the motion for consolidation was allowed. In an order filed 13 January 1986, defendants' motion for summary judgment was granted and plaintiffs' complaints were dismissed. Plaintiffs appeal.

*Kirby, Wallace, Creech, Sarda & Zaytoun, by David F. Kirby and Robert E. Zaytoun; and Whitley, Coley and Wooten, by Everette L. Wooten, Jr., for plaintiff appellants.*

*Attorney General Lacy H. Thornburg, by Chief Deputy Attorney General Andrew A. Vanore, Jr., Special Deputy Attorney General Edwin M. Speas, Jr., and Assistant Attorney General Thomas J. Ziko, for defendant appellees.*

JOHNSON, Judge.

The North Carolina General Assembly recently legislated extensive amendments to the North Carolina General Statutes pertaining to obscenity and child pornography. Many of plaintiffs' questions presented for our review pertain to those amendments aimed at preventing child pornography and are typical of what was once described as "a new phase of the intractable obscenity problem." *Interstate Circuit, Inc. v. City of Dallas*, 390 U.S. 676, 704, 20 L.Ed. 2d 225, 243, 88 S.Ct. 1298, 1313 (1968) (Harlan, J., concurring in part and dissenting in part). Plaintiffs question virtually every amendment to the statutory scheme in question as well as many provisions that were in effect prior to amendment of the statutory scheme. The extensiveness of plaintiffs' appeal is without parallel in the relevant case law on this subject. Plaintiffs' zealous attack on the constitutionality of the statutes enacted is replete with serious questions which give us great cause for concern; however, in light of the State's compelling interest in the protection of society as a willing or unwilling au-

dience from the corrupting effects of obscenity and the State's interest of surpassing importance in the protection of minors from the physiological and psychological injuries resulting from sexual exploitation and abuse, we affirm the trial court's judgment that the statutes in the case *sub judice* are permissible under the North Carolina Constitution and the United States Constitution.

Due to the nature of plaintiffs' claim that the statutes under consideration are unconstitutional as written, to the extent possible, we have endeavored to set forth the statutes as amended with relevant comparisons of the statutes prior to amendment. We are constrained by traditional rules of constitutional interpretation and note that in the context of this declaratory judgment action *our opinion is limited to the constitutionality of the statutes as drawn and we have no basis for deciding the constitutionality of the present applications of the statutes in pending cases.*

[1] The first question presented for our review is whether G.S. 14-190.1 is substantially overbroad in its coverage such that enforcement of it would violate the First and Fourteenth Amendments to the United States Constitution as well as Article I, sec. 14 of the North Carolina Constitution. Obscenity is not a constitutionally protected form of expression. *See Roth v. United States,* 354 U.S. 476, 1 L.Ed. 2d 1498, 77 S.Ct. 1304 (1957). In *Miller v. California,* 413 U.S. 15, 37 L.Ed. 2d 419, 93 S.Ct. 2607 (1973), a five justice majority opinion stated a constitutional test to identify obscene material. The three-pronged *Miller* test to identify obscene material that a state may regulate without violating the protections of the First Amendment, as made applicable to the states through the Fourteenth Amendment, establishes the following guidelines:

The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra,* at 230, 33 L.Ed. 2d 312, *quoting, Roth v. United States, supra,* at 489, 1 L.Ed. 2d 1498; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by applicable state law; and (c) whether

the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller, supra,* at 24, 37 L.Ed. 2d at 431, 93 S.Ct. at 2615. It is worthy of noting that the Court in *Miller, supra,* further stated:

> If a state law that regulates obscene material is thus limited, as written *or construed,* the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary.

*Miller, supra,* at 25, 37 L.Ed. 2d at 431, 93 S.Ct. at 2615 (emphasis supplied).

The linchpin of plaintiffs' argument is that G.S. 14-190.1 is unconstitutional because the language "taken as a whole" does not appear in every instance as it does in the *Miller* test. We disagree. G.S. 14-190.1(b) defines obscene materials as follows:

> (b) For purposes of this Article any material is obscene if:
>
> (1) The material depicts or describes in a patently offensive way sexual conduct specifically defined by subsection (c) of this section; and
>
> (2) The average person applying contemporary community standards relating to the depiction or description of sexual matters would find that *the material taken as a whole* appeals to the prurient interest in sex; and
>
> (3) The material lacks serious literary, artistic, political, or scientific value; and
>
> (4) The material as used is not protected or privileged under the Constitution of the United States or the Constitution of North Carolina.

G.S. 190.1(b) (emphasis supplied). Although the language "taken as a whole" appearing in subsection (b)(2) corresponds to the second prong of the *Miller* test, that language does not appear in subsection (b)(3). In *Hamling v. United States,* 418 U.S. 87, 41 L.Ed. 2d 590, 94 S.Ct. 2887 (1974), the Court offered its perspective of *Miller, supra,* as follows:

The *Miller* cases, important as they were in enunciating a constitutional test for obscenity to which a majority of the Court subscribed for the first time in a number of years, were intended neither as legislative drafting handbooks nor as manuals of jury instructions.

*Hamling, supra,* at 115, 41 L.Ed. 2d at 619, 94 S.Ct. at 2906. Plaintiffs' contention is that G.S. 14-190.1 allows a trier of fact to determine the obscenity of material under judicial consideration on the basis of isolated depictions contained therein. There are no reported decisions wherein there is such a construction of the statute. We unequivocally reject such an unreasonable construction of G.S. 14-190.1. The only amendment to G.S. 14-190.1(b) was the deletion of the word "educational" in subsection (b)(3).

The second prong of G.S. 14-190.1(b), when considered in *pari materia* with the third prong, of which plaintiffs complain, precludes such an unconstitutional interpretation; subsection (b)(4) evidences the General Assembly's intent to exclude any constitutionally protected expressions from the proscriptions of the statute. Moreover, the North Carolina Supreme Court passed on the constitutionality of the same codification of the *Miller* test, with the exception as noted hereinabove, as follows:

It appears that the definition of 'obscenity' in our former statute under which these defendants are charged placed a heavier burden on the State to convict than the definition prescribed in *Miller v. California, supra.* Since the latest amendment to G.S. 14-190.1 through G.S. 14-190.11 (a codification of Chapter 1434 of the 1973 Session Laws) makes it easier for the State to convict violators, the amendment affords these defendants no grounds on which to contend that their convictions are now illegal and must abate.

*State v. Hart,* 287 N.C. 76, 81, 213 S.E. 2d 291, 295 (1975). The Supreme Court of the United States has acknowledged that this state through G.S. 14-190.1 has codified the *Miller* test. *See New York v. Ferber,* 458 U.S. 747, 755-56, 73 L.Ed. 2d 1113, 1122, 102 S.Ct. 3348, 3354, n. 7 (1982). Accordingly, we hold plaintiffs' claim that G.S. 14-190.1(b) is unconstitutional on its face is without merit.

We next consider plaintiffs' argument that the proscription in G.S. 14-190.1(a)(3) is substantially overbroad in its coverage. The issue raised by plaintiffs' argument is whether the First, Fourth and Fourteenth Amendments as applicable to the states and Article I, sec. 14 of the North Carolina State Constitution protects the *dissemination* of obscene materials.

[2] Before we address the issue raised by plaintiffs' argument, we first address defendants' assertion and the trial court's judgment that plaintiffs lack standing to claim that the statute unconstitutionally prohibits dissemination of obscene materials in the home. Defendants argue that: (1) plaintiffs have no standing to enjoin the enforcement of G.S. 14-190.1 because plaintiffs have not shown that their rights have been infringed upon, *see High Point Surplus Co. v. Pleasants*, 263 N.C. 587, 139 S.E. 2d 892 (1965); and (2) that plaintiffs have not sufficiently demonstrated a justiciable controversy to invoke the jurisdiction of the Declaratory Judgment Act, *see State ex rel. Edmisten v. Tucker*, 312 N.C. 326, 323 S.E. 2d 294 (1984).

The authority relied upon by defendants for both their contentions is distinguishable because the rules for standing have been altered for those engaged in litigation involving First Amendment protections. *See Broadrick v. Oklahoma*, 413 U.S. 601, 37 L.Ed. 2d 830, 93 S.Ct. 2908 (1973). In *Broadrick, supra,* the Court enunciated its basis for altering the traditional rules of standing as follows:

> It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represents a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. As a corollary, the Court has altered its traditional rules of standing to permit—in the First Amendment area—'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the

statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

*Broadrick, supra,* at 611-12, 37 L.Ed. 2d at 839-40, 93 S.Ct. at 2915-16 (citations omitted). Also, the Court in *Carey v. Population Services International,* 431 U.S. 678, 52 L.Ed. 2d 675, 97 S.Ct. 2010 (1977) (citing *Craig v. Boren,* 429 U.S. 190, 50 L.Ed. 2d 397, 97 S.Ct. 451 (1976)), recognized that vendors are uniformly permitted to act as advocates for the rights of third parties who seek access to their market or function. We hold that plaintiffs do have standing to challenge the constitutionality of G.S. 14-190.1(a)(3). Contrary to the lower court's judgment, we also hold that plaintiffs have standing to challenge G.S. 14-190.16 (creating the offense of First degree sexual exploitation of a minor), and we shall address their challenge hereinbelow.

[3] Plaintiffs primarily rely upon *Stanley v. Georgia,* 394 U.S. 557, 22 L.Ed. 2d 542, 89 S.Ct. 1243 (1969), for the main point of their argument that there is a right to possess obscene material in the privacy of one's home. The argument posited by plaintiffs is that in amending G.S. 14-190.1, the General Assembly's deletion of the phrase "in any public place" infringes on one's zone of privacy wherein one may lawfully possess obscenity in the privacy of one's home. Plaintiffs' argument is misplaced. The Court in *Stanley, supra,* stated the following:

> [W]e think that mere categorization of these films as 'obscene' is insufficient justification for such a drastic invasion of personal liberties guaranteed by the First and Fourteenth Amendments. Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home. If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his home, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds.

*Stanley, supra,* at 565-66, 22 L.Ed. 2d at 549-50, 89 S.Ct. at 1248. Plaintiffs, in their brief, correctly interpret the amendment of G.S. 14-190.1 as follows:

By deleting the 'public place' requirement from N.C.G.S. sec. 14-190.1, the North Carolina Legislature has promulgated a regulatory scheme which proscribes not only dissemination of materials in places of public accommodation, but also in the realm of private and personal *transactions* which could conceivably take place in the privacy of one's home.

(Emphasis supplied.) G.S. 14-190.1 is aimed at the *dissemination* of obscenity which is not protected by any constitutional guarantees. *See Miller, supra.* The statute is not aimed at mere possession of obscenity in the privacy of one's own home. In *United States v. Reidel,* 402 U.S. 351, 28 L.Ed. 2d 813, 91 S.Ct. 1410 (1971), the Court expressly limited the holding in *Stanley, supra.* The Court in *Reidel, supra,* enunciated the limits to be placed on the holding in *Stanley, supra,* as follows:

The District Court gave *Stanley* too wide a sweep. To extrapolate from Stanley's right to have and peruse obscene material in the privacy of his own home a First Amendment right in *Reidel* to sell it to him would effectively scuttle *Roth*, the precise result abjured. *Whatever the scope of the 'right to receive' referred to in Stanley, it is not so broad as to immunize the dealings in obscenity* in which Reidel engaged here—dealings that *Roth* held unprotected by the First Amendment.

The right *Stanley* asserted was 'the right to read or observe what he pleases—the right to satisfy his intellectual and emotional needs in the privacy of his own home.' The Court's response was that 'a state has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds.' The focus of this language was on freedom of mind and thought and on the privacy of one's home. It does not require that we fashion or recognize a constitutional right in people like Reidel to distribute or sell obscene materials. The personal constitutional rights of those like Stanley to possess and read obscenity in their homes and their freedom of mind and thought do not depend on whether the materials are obscene or whether obscenity is constitu-

tionally protected. Their rights to have and view that materi-
al in private are independently saved by the Constitution.

*Reidel, supra,* at 355-56, 28 L.Ed. 2d at 817-18, 91 S.Ct. at 1412-13.
We hold that the proscription in G.S. 14-190.1 against *dissemina-
tion* of obscenity is not substantially overbroad. It is our con-
sidered opinion that G.S. 14-190.1 does not authorize the issuance
of criminal process for mere possession of obscenity in the priva-
cy of one's own home. We note that the General Assembly ex-
pressly excluded from the reach of G.S. 14-190.1 *any use of
materials protected by the guarantees of the Constitution of the
United States and of the North Carolina Constitution. See* G.S.
14-190.1(b)(4) (emphasis supplied).

**[4]**  Plaintiffs' next argument is that G.S. 14-190.1 does not in-
clude scienter as an essential element of the offense of dissemi-
nating obscenity. Plaintiffs contend that G.S. 14-190.1 imposes a
strict liability standard whereby a conviction for disseminating
obscenity may be had regardless of the nature of a defendant's
knowledge of the material upon which that defendant's conviction
would be based. After careful consideration of the argument ad-
vanced by plaintiffs, we disagree.

Plaintiffs contend in support of their argument that *Smith v.
California,* 361 U.S. 147, 4 L.Ed. 2d 205, 80 S.Ct. 215 (1959), held
that a person may not be held strictly liable for the contents of
the materials which he or she disseminated; and that *Mishkin v.
New York,* 383 U.S. 502, 16 L.Ed. 2d 56, 86 S.Ct. 958 (1966), reaf-
firmed the Court's interpretation of the Constitution to require
proof of scienter to avoid the inherent problems with self-censor-
ship and the difficulties in establishing what may legally be con-
sidered obscene.

G.S. 14-190.1 in pertinent part states the following:

(a) It shall be unlawful for any person, firm or corporation to
*intentionally* disseminate obscenity.

G.S. 14-190.1(a) (emphasis supplied). Defendants cite *State v.
Bryant and State v. Floyd,* 16 N.C. App. 456, 192 S.E. 2d 693
(1972), *appeal dismissed and cert. denied,* 282 N.C. 583, 193 S.E.
2d 747, *vacated and remanded,* 413 U.S. 913, 37 L.Ed. 2d 1036, 93
S.Ct. 3065, *reaffirmed,* 20 N.C. App. 223, 201 S.E. 2d 211 (1973),
*affirmed,* 285 N.C. 27, 203 S.E. 2d 27 (1974), wherein this Court re-

jected an identical argument against G.S. 14-190.1 as that advanced by plaintiffs in the case *sub judice*. There has been no change in the *mens rea* requirement stated in G.S. 14-190.1 since the filing of that opinion. This Court held the following:

> We hold that any citizen who desires to obey the law will have no difficulty in understanding the conduct proscribed by this statute. The dissemination of obscenity is not protected by the Constitutions; thus, this statute by its terms does not infringe upon the rights to disseminate protected material. In the statute it is required that one must 'intentionally disseminate obscenity.' We hold that therefore this statute does require a finding of intent and guilty knowledge before a defendant may be convicted thereunder. We reject defendants' contention that the statute is vague, overbroad, or does not require an intent and guilty knowledge. We hold that the statute is not unconstitutional. . . .

*Bryant and Floyd, supra,* 16 N.C. App. at 461, 192 S.E. 2d at 696. Upon the Supreme Court's remand of the case in light of the *Miller* cases, both this Court and the North Carolina Supreme Court upheld the constitutionality of G.S. 14-190.1. We are not aware of any recent Supreme Court rulings that require a different result from that reached in *Bryant and Floyd, supra*. During oral arguments plaintiffs strenuously argued that *Mishkin v. New York,* 383 U.S. 502, 16 L.Ed. 2d 56, 86 S.Ct. 958 (1966), and *Smith v. California,* 361 U.S. 147, 4 L.Ed. 2d 205, 80 S.Ct. 215 (1959), mandates that we hold there is not a constitutionally sufficient scienter requirement codified in G.S. 14-190.1. Our tripartite response to plaintiffs' argument is that (1) in *Smith, supra,* the Court merely held that it must be shown that a distributor must have knowledge of the contents of the material being disseminated, *id.* at 153, 4 L.Ed. 2d at 211, 80 S.Ct. at 218-19; (2) upon reconsideration by this Court in light of, *inter alia, Miller, supra,* as directed by the United States Supreme Court, *see State v. Bryant and State v. Floyd,* 413 U.S. 913, 37 L.Ed. 2d 1036, 93 S.Ct. 3065 (1973), this Court and the North Carolina Supreme Court upheld the scienter requirement of G.S. 14-190.1, *see State v. Bryant and State v. Floyd,* 20 N.C. App. 223, 201 S.E. 2d 211, *affirmed,* 285 N.C. 27, 203 S.E. 2d 27 (1974), which therefore, remains sound precedent; and (3) the Court in *Hamling v. United States,* 418 U.S. 87, 41 L.Ed. 2d 590, 94 S.Ct. 2887 (1974), reviewed

its prior decisions on the constitutional requirement that the State must prove scienter to sustain a conviction. In doing so the Court in *Hamling, supra,* at 124, 41 L.Ed. 2d at 624, 94 S.Ct. at 2911 (quoting *United States v. Wurzbach,* 280 U.S. 396, 399, 74 L.Ed. 508, 510, 50 S.Ct. 167, 169 (1930)), reaffirmed the following familiar precept of criminal law:

> 'Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing so, it is familiar to the criminal law to make him take the risk.'

*Id.* It is not innocence but *calculated dissemination* of obscene material which is exorcised by G.S. 14-190.1 and accordingly, we hold that the scienter requirement therein is constitutionally sufficient.

**[5]** Plaintiffs next argue that G.S. 14-190.1(d) is substantially overbroad and vague. Plaintiffs contend that G.S. 14-190.1(d) departs from the *Miller* test by allowing obscenity to be judged with reference to especially susceptible audiences.

The Court in *Miller, supra,* only required that material be judged according to the average contemporary community standards when the material is not aimed at a "deviant group." *See Miller, supra,* at 33, 37 L.Ed. 2d at 436, 93 S.Ct. at 2620. *See also Mishkin, supra,* at 508-509, 16 L.Ed. 2d at 62, 86 S.Ct. at 963. G.S. 14-190.1(d) states the following:

> Obscenity shall be judged with reference to ordinary adults except that it shall be judged with reference to children or other especially susceptible audiences if it appears from the character of the material or the circumstances of its dissemination to be especially designed for or directed to such children or audiences.

G.S. 14-190.1(d). Although the Court in *Mishkin, supra,* relied upon its holding in *Roth v. United States,* 354 U.S. 476, 1 L.Ed. 2d 1498, 77 S.Ct. 1304 (1957), we find as persuasive the following:

> Where the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient appeal requirement of the *Roth*

test is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group. . . . We adjust the prurient-appeal requirement to social realities by permitting the appeal of this type of material to be assessed in terms of the sexual interests of its intended and probable recipient group and since our holding requires that the recipient group be defined with more specificity than in terms of sexually immature persons [footnote omitted], it also avoids the inadequacy of the most-susceptible-person facet of the *Hicklin* test.

*Mishkin, supra,* at 508-09, 16 L.Ed. 2d at 62, 86 S.Ct. at 963-64. We find nothing in the aforementioned cases controlling on this question that would require the General Assembly to include a detailed list of each and every pertinent type of deviant sexual group. We hold that G.S. 14-190.1 is not substantially overbroad and gives sufficiently definite warning of the proscriptions therein.

**[6]**   Plaintiffs next argue that G.S. 14-190.1(c) is unconstitutionally vague under the North Carolina Constitution and the Constitution of the United States because its terms and coverages are such that a reasonable person would not reasonably know the conduct proscribed by said statute's terms. We disagree.

The principle dispositive of the question presented by plaintiff was stated by Justice Brennan in *Roth, supra* (quoting *United States v. Petrillo*, 332 U.S. 1, 7-8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877, 1883 (1946) ), as follows:

Many decisions have recognized that these terms of obscenity statutes are not precise. [Footnote omitted.] This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '. . . [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. . . .'

*Roth, supra* at 491, 1 L.Ed. 2d at 1510-11, 77 S.Ct. at 1312. In *Miller, supra,* the Court outlined a "few plain examples" of statutes that could pass constitutional muster, as follows:

We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, supra:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, *excretory functions* and lewd exhibition of the genitals.

*Miller, supra,* at 25, 37 L.Ed. 2d at 431, 93 S.Ct. at 2615 (emphasis supplied). Considering the inclusion of the emphasized portion of the excerpt, quoted hereinabove, we do not find as persuasive plaintiffs' argument that "inclusion of such activities [excretory functions] makes the statute vague when considered in the context of the *Miller* decision." Another aspect of plaintiffs' argument is that "torture, physical restraint by being fettered or bound, or flagellation by a person clad in undergarments or bizarre costume have no sexual connotation whatsoever." It is paradoxical that these plaintiffs complain that many portions of the statute are vague, but when the State definitively gives notice of the conduct to be proscribed, plaintiffs attack the proscription of the specific conduct as stated by the General Assembly. As we have discussed, *supra,* it is constitutionally permissible to draft an obscenity statute that will take into account the dominant theme of material which is aimed at an especially susceptible audience. *See Miller, supra.* Moreover, since the trier of fact evaluates the material in a manner substantially mandated by G.S. 14-190.1(a) and G.S. 14-190.1(d), we read subsections (a) and (d) of G.S. 14-190.1 in *pari materia* with G.S. 14-190.1(c) and thereby find plaintiffs' Assignment of Error is without merit.

[7] Plaintiffs' next issue to be addressed is, whether the absence of a statutory right in G.S. 14-190.1 to an adversarial hearing or a judicial determination of the obscenity of materials held as evidence constitutes a prior restraint on plaintiffs' First Amendment rights. We hold, for reasons to follow, that it is not constitutionally mandated for a state to statutorily create a right to a prompt

adversary proceeding on the obscenity of material seized and retained as evidence pending a trial wherein said evidence will be introduced.

In our research we find no reported opinions by the United States Supreme Court wherein a statutory scheme defining obscenity has been held invalid due to the absence of a statutorily specified procedure to a prompt adversary proceeding on the obscenity of seized evidence that is held pending trial. The Supreme Court of the United States has stated that there is no First or Fourteenth Amendment right to an adversary hearing prior to the seizure of allegedly obscene material. *Heller v. New York*, 413 U.S. 483, 488, 37 L.Ed. 2d 745, 751, 93 S.Ct. 2789, 2792 (1973). In *Heller, supra*, the Court distinguished the cases of large scale seizure of books for their destruction, *see A Quantity of Books v. Kansas*, 378 U.S. 205, 12 L.Ed. 2d 809, 84 S.Ct. 1723 (1964); *see also Marcus v. Search Warrant*, 367 U.S. 717, 6 L.Ed. 2d 1127, 81 S.Ct. 1708 (1961), from cases where there is seizure of a single item seized as evidence for the bona fide purpose of preserving evidence in a criminal proceeding. The Court articulated its approach to the latter case as follows:

> If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and following the seizure a prompt [footnote omitted] judicial determination of the obscenity issue in an adversary proceeding *is available at the request of an interested party*, the seizure is constitutionally permissible. In addition, on a showing to the trial court that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding [footnote omitted] otherwise the film must be returned.

*Heller, supra*, at 492-93, 37 L.Ed. 2d at 754, 93 S.Ct. at 2795 (emphasis supplied). The Court in *Heller, supra*, went on to hold as constitutional the New York Penal Laws dealing with obscenity and the procedures involved with the prosecution of the obscenity charges based on New York Penal Laws even though there were no statutory provisions for a prompt adversary hearing. We note that the defendant in *Heller, supra*, received his trial forty-seven

(47) days after his arrest. The Court, in a footnote, defined "prompt" as "the shortest period compatible with sound *judicial* resolution." *Heller, supra,* at 492, 37 L.Ed. 2d at 754, 93 S.Ct. at 2795, n. 9 (emphasis supplied).

In the more recent case of *New York v. P. J. Video, Inc.,* - - - U.S. - - -, 89 L.Ed. 2d 871, 106 S.Ct. 1610 (1986), the Court explained its reasoning in the *Heller* opinion, as follows:

> In *Heller v. New York,* 413 U.S. 483, 37 L.Ed. 2d 745, 93 S.Ct. 2789 (1973), we emphasized that, even where a seizure of allegedly obscene materials would not constitute a 'prior restraint,' but instead would merely preserve evidence for trial, the seizure must be made pursuant to a warrant and there must be an opportunity for a prompt *post seizure* judicial determination of obscenity.

*New York v. P. J. Video, Inc., supra,* at - - -, 89 L.Ed. 2d at 879, 106 S.Ct. at 1614 (emphasis supplied). Although there is no statutory right to a prompt post-seizure adversary hearing, our understanding of *Heller, supra,* and *P. J. Video, Inc., supra,* is that the Constitution requires that there must be an opportunity for a prompt post-seizure adversary hearing on the obscenity of the evidence being held pending trial and the burden is on the person seeking the return of the material to request such a hearing. The Court in *Heller, supra,* noted that defendant had not made a motion to suppress the evidence. In North Carolina a defendant may make a motion to suppress the evidence, *see* G.S. 15A-977, and although a probable cause hearing is not required for a felony charge in Superior Court, upon request a court could conceivably grant such a request to provide an adversary hearing as mandated by *Heller, supra.* Accordingly, we hold that the statutory scheme does not constitute a prior restraint merely because there is no provision for an adversary hearing which a defendant bears the burden of requesting. We note that any complaint or criminal process issued pursuant to G.S. 14-190.1 *et seq.,* must be requested by a prosecutor. G.S. 14-190.20. Plaintiffs in their brief illustrate many "fictitious-worst case-scenarios" wherein impermissible *applications* of the statute may infringe upon the right to a prompt adversary hearing. However, these scenarios are not justiciable controversies and do not pertain to the facial validity of the statutes. If these fears are realized and a

defendant is deprived of his right to a prompt adversary hearing, then if called upon our courts will rule accordingly. *See generally Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 86 L.Ed. 2d 394, 105 S.Ct. 2794 (1985) (the evident likelihood that Washington Courts would construe a state statute aimed at preventing and punishing the publication of obscene materials to conform with the *Miller* standards counseled against facial invalidation of that statute).

Next, plaintiffs argue that G.S. 14-190.16 and G.S. 14-190.17 are substantially overbroad and vague in violation of the First and Fourteenth Amendment of the United States Constitution and Article I, sec. 19 of the Constitution of North Carolina. It is contended by plaintiffs that G.S. 14-190.16 and G.S. 14-190.17 prohibit the dissemination of material that is not related to the exploitation of minors.

[8] Our discussion of the statute *sub judice* began with the principle that obscenity is not protected expression within the meaning of the First Amendment. *See Roth, supra.* The Supreme Court of the United States has ruled that it is constitutionally permissible to consider as without the protections of the First Amendment those materials classified as child pornography. *Ferber, supra*, at 764, 73 L.Ed. 2d at 1127, 102 S.Ct. at 3358. The Court went on to articulate a test for child pornography and distinguish that test from the *Miller* test for obscenity:

> The test for child pornography is separate from the obscenity standard enunciated in *Miller*, but may be compared to it for purpose of clarity. The *Miller* formulation is adjusted in the following respects: A trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole.

*Id.*

Our line of inquiry now turns to those questions presented by plaintiffs with respect to the facial validity of those subsections of G.S. 14-190 pertaining to the criminal offense of sexual exploitation of minors. The first question presented by plaintiffs is, whether, in violation of the First and Fourteenth Amendments to

the United States Constitution, G.S. 14-190.16 and G.S. 14-190.17 authorize the State to prosecute a charge of dissemination of materials harmful to minors when the production of said material does not require the use of a live minor. Plaintiffs complain that G.S. 14-190.13(2) states, *inter alia*, that for purposes of G.S. 14-190.16 and G.S. 14-190.17, "material" is defined as follows:

> Pictures, *drawings*, video recordings, films or other visual depictions or *representations* but not material consisting entirely of written words.

G.S. 14-190.13(2) (emphasis supplied). Thus, plaintiffs argue, "Despite the clear admonition of the Supreme Court, North Carolina General Statute 14-190.17 prohibits the dissemination of drawings or 'representations' that depict minors engaged in sexual activity. However, neither a drawing nor a representation would require the use of an actual person in their production." We agree with plaintiffs' assertion that the Court in *Ferber v. New York*, 458 U.S. 747, 73 L.Ed. 2d 1113, 102 S.Ct. 3348 (1982), noted that "depictions of sexual conduct otherwise not obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retains First Amendment protection." *Id.* at 764-65, 73 L.Ed. 2d at 1127, 102 S.Ct. at 3358. However, plaintiffs' argument that G.S. 14-190.16 and G.S. 14-190.17 do not require a live minor as an essential element is without merit. Clearly, G.S. 14-190.16 repeatedly refers to live performances, which in turn would require a live minor. Moreover, immediately following the definition of "material" we find the definition of a "minor" in G.S. 14-190.13(3), as follows:

> (3) Minor.—An *individual* who is less than 18 years old and is not married or judicially emancipated.

G.S. 14-190.13(3) (emphasis supplied). Therefore, when G.S. 14-190.16 and G.S. 14-190.17 refer to a visual representation of a minor, they are referring to a representation of a live person under 18 years of age. We hold that the State has an interest of surpassing importance in the health, safety and welfare of minors; G.S. 14-190.16 and G.S. 14-190.17 are sufficiently narrowly tailored toward said interests and do require the exploitation of a *live* minor to sustain convictions thereunder.

[9] We now address plaintiffs' argument that the statutes in question impermissibly ban all depictions of persons portrayed as minors in a romantic encounter that involves an apparent sexual touching. G.S. 14-190.13(5)(c) defines sexual activity as follows:

> c. Touching, in an act of apparent sexual stimulation or sexual abuse, of the clothed or unclothed genitals, pubic area, or buttocks of another person or the clothed or unclothed breasts of a human female.

G.S. 14-190.13(5)(c). Plaintiffs in support of their argument contend that there are films with a "P.G." rating or an "R" rating which are "accepted entertainment," but would fall within the ambit of the statute. We express no opinion on the artistic value of the films mentioned by plaintiffs, nor do we attempt to refute the acceptance of these types of films as entertainment. We do recognize that whatever value those mentioned films may have, such value is overwhelmingly outweighed by the State's compelling interest in protecting its youth from the debilitating psychological and emotional trauma that are attendant with child pornography and bear so heavily and pervasively upon the welfare of children. *See Ferber, supra.* Our sentiment in this regard was aptly expressed by the Court in *Ferber, supra,* as follows:

> We consider this the paradigmatic case of a state statute whose legitimate reach dwarfs its arguably impermissible applications.

*Id.* at 773, 73 L.Ed. 2d at 1133, 102 S.Ct. at 3363. The Court in *Ferber, supra,* before adjusting the *Miller* test, stated the following:

> As with all legislation in this sensitive area, the conduct to be prohibited must be adequately defined by the applicable state law, as written or authoritatively construed. Here, the nature or the harm to be combatted requires that the state offense be limited to works that *visually* depict sexual conduct by children below a specified age. [Footnote omitted.] The category of sexual conduct must also be suitably limited and described.

*Id.* at 764, 73 L.Ed. 2d at 1127, 102 S.Ct. at 3358. We hold that G.S. 14-190.13(5)(c) is not substantially overbroad and comports with the requirement stated in *Ferber, supra,* that there must be

limits placed on the category of sexual conduct. G.S. 14-190.13(5)(c) proscribes *apparent* sexual stimulation. G.S. 14-190.13(5)(c) (emphasis supplied). We further hold that whatever overbreadth may exist should be cured through a case-by-case analysis of fact situations to which its sanctions assertedly may not be applied. *See Ferber, supra,* at 773-74, 73 L.Ed. 2d at 1133, 102 S.Ct. at 3363. *See also Broadrick, supra,* at 615-16, 37 L.Ed. 2d at 842, 93 S.Ct. at 2918.

[10]   Plaintiffs next present a multi-faceted argument that G.S. 14-190.16 and G.S. 14-190.17 do not require scienter as an essential element thereunder and therefore violate their rights under the First and Fourteenth Amendments of the United States Constitution. We disagree. As a prelude, plaintiffs fashion a strained and difficult to follow argument that, in essence, G.S. 14-190.16 and G.S. 14-190.17 constitute prior restraints upon video dealers because under said statutes there is no mistake of age defense to prosecutions and the trier of fact may infer from, *inter alia,* the title and text of the material viewed that the person depicted as a minor engaged in sexual activity is a minor. Plaintiffs contend that the reasoning in *Ginsberg v. New York,* 390 U.S. 629, 20 L.Ed. 2d 195, 88 S.Ct. 1274 (1968), and *Smith, supra* (wherein the Court discussed the dangers of self-censorship in connection with the states' power to restrict the dissemination of *obscenity*) is applicable and urge us to hold that these statutes creating the offenses of the sexual exploitation of minors are unconstitutional. We do not find plaintiffs' analogy appropriate for the State is entitled to "a greater leeway in the regulation of pornographic depictions of children." *Ferber, supra,* at 756, 73 L.Ed. 2d at 1122, 102 S.Ct. at 3354. As the Court noted in *Ferber, supra,* "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways." *Id.* at 759, 73 L.Ed. 2d at 1124, 102 S.Ct. at 3355. The Court, in a footnote, has found and we likewise find the following explanation persuasive:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who was posed for a camera must go

> through life knowing that the recording is circulating within the mass distribution system for child pornography.

*Id.* n. 10 (quoting Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 Wake Forest L. Rev. 535, 545 (1981)). Bearing in mind such somber reasoning, we find as persuasive defendants' argument that mistake of age is not a defense to prosecution for first degree rape, G.S. 14-27.2(a)(1), nor to first-degree sexual offense, G.S. 14-27(a)(1). *See State v. Wade*, 224 N.C. 760, 32 S.E. 2d 314 (1944). Moreover, mistake of age is not a defense to the offense of taking indecent liberties with a minor. G.S. 14-202.1. We are cognizant of the fact that "criminal responsibility may not be imposed without some element of scienter on the part of the defendant." *Ferber, supra,* at 765, 73 L.Ed. 2d at 1127, 102 S.Ct. at 3358. Both G.S. 14-190.16 and G.S. 14-190.17 require that a defendant must "[know] the character or content of the material" in question. A reasonable construction of the statute would be that in order to sustain a conviction, the State would have to prove that a defendant knew that the material in question contained depictions of persons appearing to be minors engaged in sexual activity as defined by G.S. 14-190.13(5). *See Andrews v. Chateau X*, 296 N.C. 251, 250 S.E. 2d 603 (1979), *vacated and remanded on other grounds*, 445 U.S. 947, 63 L.Ed. 2d 782, 100 S.Ct. 1593 (1980), *affirmed*, 302 N.C. 321, 275 S.E. 2d 443 (1981). *See also Martin v. North Carolina Housing Corp.*, 277 N.C. 29, 175 S.E. 2d 665 (1970) (when the constitutionality of a statute is challenged every presumption is to be indulged in favor of its validity). Accordingly, we hold that there is a scienter requirement in G.S. 14-190.16 and G.S. 14-190.17. We further hold that the proscriptions contained in said statutes do not constitute prior restraints.

[11] Plaintiffs also argue that the statutory inference of minority permitted by G.S. 14-190.16(b) and G.S. 14-190.17(b) violates the due process clause of the Fourteenth Amendment to the United States Constitution and Article I, sec. 19 of the North Carolina Constitution. G.S. 14-190.16(b) and G.S. 14-190.17(b) are identical and they state the following:

> (b) Inference. In a prosecution under this section, the trier of fact may infer that a participant in sexual activity whom material through its title, text, visual representations, or otherwise represents or depicts as a minor is a minor.

In *Barnes v. United States*, 412 U.S. 837, 37 L.Ed. 2d 380, 93 S.Ct. 2357 (1973), the Court summarized its holdings from prior cases dealing with statutory inferences as follows:

> [I]f a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process.

*Id.* at 843, 37 L.Ed. 2d at 386, 93 S.Ct. at 2361-62. Bearing these principles in mind, we turn to the statutory inference in the case *sub judice* to determine if it meets the reasonable doubt standard.

The statutory inference of minority *permits*, but does not mandate that the trier of fact consider as sufficient the circumstantial evidence from which it may be concluded beyond a reasonable doubt that an actor is still of the age of minority. The actor's appearance and growth are competent evidence for the jury to look upon and draw reasonable inferences as to the age of the actor. *See State v. Hunter*, 299 N.C. 29, 261 S.E. 2d 189 (1980). In *Hunter, supra*, the State, in order to obtain a first-degree kidnapping conviction of the defendant, had to prove beyond a reasonable doubt that the victim was 16 years of age or older. The Court stated the following:

> She was before the jury and it was competent for the jury to look upon her and draw reasonable inferences as to her age from her appearance and growth.

*Id.* at 40, 261 S.E. 2d at 196. G.S. 14-190.16(b) and G.S. 14-190.17(b) do not relieve the State of its burden of proving an essential element of the offense. The inference section merely states what is already recognized by common law and evidentiary rules in North Carolina, to wit: the jury *may* be convinced beyond a reasonable doubt by the State's presentation of circumstantial evidence. The trier of fact may choose to accept the evidence as convincing or reject the evidence as unconvincing. We note that in *Ferber, supra*, the Court upheld New York Penal Law, sec. 263.25 (McKinney 1980), which embodies the same type of inference as that permitted by G.S. 14-190.16(b) and G.S. 14-190.17(b). We hold that G.S. 14-190.16(b) and G.S. 14-190.17(b) do not relieve the State of its

burden of proving beyond a reasonable doubt every essential element of the heinous offenses of first and second degree sexual exploitation of a minor.

[12]  Plaintiffs further argue that the inference of minority pursuant to G.S. 14-190.16(b) and G.S. 14-190.17(b) is a violation of the protections guaranteed by the First Amendment of the United States Constitution. The basic argument forwarded by plaintiffs is that the inference permitted by the aforementioned statutes does not meet the *Ferber* test. We disagree.

Plaintiffs begin their argument with the following statement by the Court in *Ferber, supra*: "if it were necessary for literary or artistic value, a person over the statutory age who perhaps looked younger could be utilized [footnote omitted]." *Id.* at 763, 73 L.Ed. 2d at 1126, 102 S.Ct. at 3357. The inference allowed does not prevent the dissemination of films that utilize actors who have reached the age of majority. We hold, consistent with our reasoning *supra*, with respect to the subject statutory inference, that this is a paradigmatic case of a state statute whose legitimate reach dwarfs its *arguably* impermissible applications. *Ferber, supra*, at 773, 73 L.Ed. 2d at 1133, 102 S.Ct. at 3363.

[13]  Plaintiffs' last argument is that G.S. 14-190.17 and G.S. 14-190.13 are unconstitutionally vague and do not provide fair notice of their prohibitions. G.S. 14-190.17 makes it unlawful to disseminate material that contains a "visual representation" of a minor engaged in sexual activity. G.S. 14-190.17(b) as quoted *supra* also refers to "visual representations." In G.S. 14-190.13(2), "material" is defined as "pictures, drawings, video recordings, films or other visual *depictions* or *representations* but not material consisting entirely of written words." Plaintiffs opine that the use of such language as "representations" forces the plaintiffs to guess at what activity and material is prohibited and therefore has a chilling effect on the exercise of their right to free speech as guaranteed by the First Amendment of the Constitution of the United States and Article I, sec. 19 of the North Carolina Constitution. Our first response to plaintiffs is that a careful reading of the Court's opinion in *Ferber, supra*, reveals that New York Penal Law sec. 263.00(4) (McKinney 1980) was drafted with the very same language as that complained of by plaintiffs. The Court in *Ferber, supra*, construed the aforementioned statute as follows:

> A performance is defined only to include live or visual *depictions*: 'any play, motion picture, photograph or dance . . . [or] other *visual representation* before an audience.' sec. 263.00(4).

*Ferber, supra,* at 765, 73 L.Ed. 2d at 1128, 102 S.Ct. at 3359 (emphasis supplied). The Court in *Ferber, supra,* upheld the constitutionality of the New York laws addressing child pornography. We hold that G.S. 14-190.17(b) and G.S. 14-190.13 comport with the constitutional principles articulated in *Ferber, supra.* In support of our holding we note that all that is required to pass constitutional muster is that a statute's language "convey sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *United States v. Petrillo,* 332 U.S. 1, 7-8, 91 L.Ed. at 1877, 1883, 67 S.Ct. at 1538, 1542 (1947). For reasons stated hereinabove, the judgment is

Affirmed.

Judge COZORT concurs.

Judge BECTON dissents.

Judge BECTON concurring in part and dissenting in part.

Though mindful of the cardinal principle of statutory interpretation that legislative acts are presumed to be constitutional, and recognizing the power of courts to authoritatively construe legislation consonant with the constitutional standards, I can concur in only part of the majority's opinion. Specifically, I believe our "Obscene Literature and Exhibition" statute is constitutional even though the language "taken as a whole" does not appear in N.C. Gen. Stat. Sec. 14-190.1(b)(3) (1985), ante pp. 553-554, and even though N.C. Gen. Stat. Sec. 14-190.1(d) allows obscenity to be judged with reference to especially susceptible audiences, ante p. 560. Like the majority, I also reject plaintiffs' arguments that the reference to activities like "excretory functions" and "torture, physical restraint by being fettered or bound, or flagellation by a person clad in undergarments or bizarre costume" makes the statute vague and includes activities that have no sexual connotation whatsoever. *See* ante p. 562. With regard to our "Sexual Exploitation of Minors" statute, I agree with the majority that N.C. Gen.

Stat. Secs. 14-190.16 and 14-190.17 "require the exploitation of a live minor to sustain convictions thereunder," ante p. 566.

Plaintiffs' other challenges to N.C. Gen. Stat. Sec. 14-190.1 *et seq.* are meritorious, in my view, and I therefore dissent. I do not question our General Assembly's authority to address comprehensively the burgeoning and sensitive issues relating to obscenity and sexual exploitation of minors. After all, obscenity is not now, nor has it ever been, considered protected speech under the United States Constitution or the North Carolina Constitution,[1] and legislators are expected to respond properly to the felt needs of the electorate. However, the public's clarion call to eradicate the evils of child pornography and the crass commercialization of obscenity does not obviate the need for prudential judicial review of legislation regarding obscenity and sexual exploitation of minors. And the undergirding purpose supporting this legislation, whether noble or rancorous, cannot justify imposing a unified moral orthodoxy on the public when that purpose can be achieved in a way that does not unduly stifle constitutionally protected speech or press.

Sex and obscenity are not synonymous, *Roth*, 354 U.S. 476, 487, 1 L.Ed. 2d 1498, 1508, and some sexually explicit material has serious literary, artistic, or scientific value. Consequently, although obscenity is not considered protected speech, statutes regulating obscenity must be narrowly drawn and precisely worded so that otherwise protected expression will not be outlawed or chilled. Even child pornography legislation must limit the proscribed materials to those whose production is physically or psychologically harmful to children, *New York v. Ferber*, 458 U.S. 747, 760-64, 73 L.Ed. 2d 1113, 1124-27 (1982). "Ceaseless vigilance is the watchword to prevent . . . the States" from eroding the fundamental freedoms of speech and press. *Roth*, 354 U.S. at 488, 1 L.Ed. 2d at 1509.

---

1. *See Roth v. United States*, 354 U.S. 476, 484, 1 L.Ed. 2d 1498, 1507 (1957) ("[I]mplicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance."); *Miller v. California*, 413 U.S. 15, 23, 37 L.Ed. 2d 419, 430 (1973) ("This much has been categorically settled by the court, that obscene material is unprotected by the First Amendment."), *reh'g denied*, 414 U.S. 881 (1973); *State v. Bryant*, 16 N.C. App. 456, 461, 192 S.E. 2d 693, 696 (1972) ("The dissemination of obscenity is not protected by the Constitutions.").

North Carolina's statutory scheme to control obscenity and the sexual exploitation of minors is not a paradigm of clarity. Indeed, the trial court in upholding the constitutionality of the challenged statutes, acknowledged, albeit obliquely, the arguably intractable ambiguity of some provisions by stating, on eleven separate occasions in its four-page order, that the statutes "when reasonably construed" are constitutional. Some would question the constitutionality of any statutory scheme that had to be "saved" in so many particulars; however, in my view, even the trial court's limiting construction did not eliminate all the constitutional infirmities. Believing the statutory scheme still suffers major maladies that require legislative surgery, not judicial patchwork, considering the unquestioned constitutional right to pursue first amendment activities, and seeking scrupulously to observe the dictates of *Roth* and other first amendment cases, I conclude that the challenged statutes are fatally flawed in the following particulars: (1) N.C. Gen. Stat. Sec. 14-190.1 constitutes a prior restraint of expression because it fails to provide for a prompt adversary hearing and judicial determination of the obscenity of materials retained as evidence; (2) N.C. Gen. Stat. Sec. 14-190.1 sets up a standard of strict liability and does not require knowledge of the content and nature of materials to support a conviction; (3) N.C. Gen. Stat. Sec. 14-190.1 proscribes the private dissemination of obscenity in one's home; (4) N.C. Gen. Stat. Secs. 14-190.16 and 14-190.17 are overbroad and prohibit the dissemination of material that has no sexual connotation and is not related to the exploitation of minors; and (5) N.C. Gen. Stat. Secs. 14-190.16 and 14-190.17 require no scienter, impose strict liability upon the disseminator of material depicting an individual under eighteen engaging in "sexual conduct," and create an inference that a person depicted as a minor is a minor.

I

*Obscene Literature and Exhibitions Statute*

A.   Prior Restraint

In 1985 the North Carolina legislature enacted House Bill 1171 which made several major changes to the obscenity laws of North Carolina. One amendment repealed the adversary hearing procedures contained in N.C. Gen. Stat. Sec. 14-190.2, thereby deleting from the statute any mechanism for an adversary hear-

ing either before or after seizure of allegedly obscene material. Consequently, the statute does not allow for a determination of the obscenity of the material short of a jury trial. I agree with the plaintiffs who assert that the "seizure and holding of material allegedly obscene in itself can become a form of censorship."

Addressing the requirement of a prompt judicial determination of obscenity, the United States Supreme Court in *Heller v. New York*, stated that a seizure for the bona fide purpose of preserving materials as evidence in a criminal proceeding is constitutionally permissible

> [i]f such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a *prompt* judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party. . . . (Emphasis added.)

413 U.S. 483, 492, 37 L.Ed. 2d 745, 754 (1973). The requirement of an adversary hearing *before* a seizure allowed one to disseminate suspected obscene material up until the time of the hearing and to substitute equally obscene material for material declared obscene in a prior hearing. That some disseminators therefore avoided prosecution does not justify, however, the North Carolina legislative response which fails to include a mechanism for a *prompt post-seizure* judicial determination of obscenity.

The majority's suggestion that, "although a probable cause hearing is not required for a felony charge in superior court, upon request a court could conceivably grant such a request to provide an adversary hearing," ante p. 564, is too slender a reed to support the prior restraint in this case. The present statutory scheme allows a seizure and a holding of allegedly obscene material and constitutes a form of censorship. What the majority describes as "fictitious-worst case-scenarios," ante p. 564, represents the reality of the situation, not unfounded fears. A prosecutor who believes certain material is obscene, who has obtained a warrant to seize the obscene material, and who has had the disseminator arrested, is likely to proceed directly to the grand jury for an indictment. Moreover, the final determination on the issue of obscenity at trial may not occur for several months following a disseminator's arrest. As stated by plaintiffs in their brief, the North Carolina Speedy Trial Act, requiring that a person be

brought to trial within 120 days of arrest or indictment whichever occurs last, is of minimal aid to a person who is charged with dissemination of allegedly obscene material in the difficult marginal case, and who desires a prompt hearing on the issue of obscenity.

Significantly, the mechanism for a prompt post-seizure judicial determination of obscenity could easily have been placed in the statute. For example, the North Carolina nuisance statute, N.C. Gen. Stat. Sec. 19-1 to 19-8.3 (1983 & Cum. Supp. 1985) sets out a specific mechanism for assuring that the allegedly obscene nature of material is promptly adjudicated. The statute sets forth a procedure whereby one temporarily enjoined from certain activity cannot only file a motion to dissolve the temporary restraining order, but can also have that motion heard within 24 hours of the time a copy of the motion is served or on the next day the superior court is open in the district. *See* N.C. Gen. Stat. Sec. 19-2.3.

Given the repeal of N.C. Gen. Stat. Sec. 14-190.2, there is no statutory safeguard against either the dilatory or good faith administrative delay by prosecutors. Thus, the seizure of allegedly obscene material is a form of censorship, and constitutes a "prior restraint." In sum, the North Carolina statute is defective in view of *Heller* because it fails to provide a mechanism guaranteeing a *prompt* judicial determination of obscenity.

B.  Strict Liability

N.C. Gen. Stat. Sec. 14-190.1 makes it unlawful for any person to intentionally disseminate obscenity. Defining obscenity has never been an easy chore. *See New York v. Ferber*, 458 U.S. 747, 754, 73 L.Ed. 2d 1113, 1121. *See also Jacobellis v. Ohio*, 378 U.S. 184, 197, 12 L.Ed. 2d 793, 803-04 (1964) (Justice Stewart could not define obscenity but he knew it when he saw it). The phrase "intentionally disseminate obscenity" is fraught with ambiguity. Knowledge of the character and nature of material is certainly different from knowledge of the legal status of the material, but does the phrase "intentionally disseminate obscenity" mean that the disseminator must have knowledge of the content and the character of the material disseminated? Is knowledge of the contents alone sufficient? Or does the phrase impose strict liability when one intentionally acts? For example, pulling the trigger of a gun is an intentional act, but the nature, character or content of

the act may differ if the gun is fired into the ocean or if the gun contains no bullets.

To avoid the hazard of self-censorship of constitutionally protected material, the United States Supreme Court rejected the notion that a person could be held strictly liable for the contents of material he disseminated. *Smith v. California*, 361 U.S. 147, 4 L.Ed. 2d 205 (1959). Equally important, the United States Supreme Court requires states to "show that a defendant had knowledge of the contents of the materials he distributed, *and* that he knew the character and nature" of those materials. *Hamling v. United States*, 418 U.S. 87, 123, 41 L.Ed. 2d 590, 624 (1974) (emphasis added).

A disseminator must not only know that the material contains descriptions or depictions of sexual conduct (content), but he must also know that the descriptions or depictions of sexual conduct are, or could reasonably be deemed, lewd or offensive (character).[2] This two-pronged scienter requirement, first suggested in 1966 in *Mishkin v. New York*, 383 U.S. 502, 16 L.Ed. 2d 56, *reh'g denied*, 384 U.S. 934 (1966) protects defendants from the ambiguity inherent in these types of laws, and avoids the dangers of self-censorship. *Mishkin*, 383 U.S. at 511, 16 L.Ed. 2d at 63. Admittedly, the two-pronged scienter requirement hampers effective law enforcement. It is not always easy to prove, for example, that those who disseminate books, periodicals, films, or videos, know the character of the material they sell. It is even more difficult to prove that sales clerks, by way of further example, know the character of all the material they sell. Further, nothing in *Hamling* prevents a disseminator from ordering, sight unseen, video tapes and books which are sealed in tamper-proof containers. The *Hamling* Court was obviously aware that some defendants would not be convicted because of the stringency of the content and character test. Nevertheless the *Hamling* Court used the conjunc-

---

2. The strict liability standard was actually a part of G.S. Sec. 14-190.1 before the 1985 amendment. At that time, however, a prior hearing was statutorily mandated. Thus, anyone who could be prosecuted under G.S. Sec. 14-190.1 would not only know the nature of the material before the prohibited dissemination, but would also know that the material was in fact obscene. With the repeal of the proviso authorizing a prior adversary hearing the strict liability standard becomes particularly burdensome.

tion "and." Indeed, the Supreme Court has not relaxed the two-pronged scienter requirement in the twenty years since *Mishkin*.

Apparently, the trial court agreed with plaintiffs that Section 14-190.1, as written, is constitutionally overbroad. Giving the statute a limiting construction, the trial court said: "When reasonably construed, G.S. Sec. 14-190.1(a) provides that a person may be convicted of violating that statute only upon proof beyond a reasonable doubt that he knew the character *or* content of the material when he disseminated it as required by *Hamling*." (Emphasis added.) This construction, however, does not save the statute because *Hamling* and *Mishkin* require proof of the defendant's knowledge of both the contents *and* the character of the material.

Defendants' reliance on *State v. Bryant*, 16 N.C. App. 456, 461, 192 S.E. 2d 693, 696 (1972) is misplaced. *Bryant* was decided nineteen months before *Hamling*, and the *Bryant* holding that the intentional dissemination of obscenity requires a finding of intent and guilty knowledge, does not suggest whether "intent and guilty knowledge" refers to the content or the character (or both) of the material one intentionally disseminates.

In my view, the two-pronged scienter requirement helps to ensure that individuals will not be deterred from disseminating constitutionally protected material out of fear that the material could be found unlawful since the line between obscene and non-obscene material is "dim and uncertain." *Bantam Books v. Sullivan*, 372 U.S. 58, 66, 9 L.Ed. 2d 584, 590 (1963). The majority's quote from *United States v. Wurzbach* that "[t]he precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it is familiar to the criminal law to make him take the risk," is inapposite since *Wurzbach* is not a first amendment case. 280 U.S. 396, 399, 74 L.Ed. 2d 508, 510 (1930). Some rights can be chilled but not first amendment rights.

C.  Private Dissemination

The 1985 amendment to G.S. Sec. 14-190.1 deleted the words "in any public place" so as to prohibit the dissemination of obscenity in any place, whether public or private. Because dissemination does not require a commercial transaction and because a right to possess obscene material in the privacy of one's home

was recognized in *Stanley v. Georgia*, 394 U.S. 557, 22 L.Ed. 2d 542 (1969), plaintiffs argue that G.S. Sec. 14-190.1 is overbroad and conflicts with *Stanley* by extending its tentacles of proscription far beyond the public realm contemplated by the United States Supreme Court.

The United States Supreme Court has adamantly refused to permit state regulation of possession of obscenity in one's home. *See Stanley v. Georgia; Paris Adult Theater I v. Slayton*, 413 U.S. 49, 37 L.Ed. 2d 446 (1973); *United States v. Orito*, 413 U.S. 139, 37 L.Ed. 2d 513 (1973); *United States v. 12 200-ft Reels of Super 8 MM. Film*, 413 U.S. 123, 37 L.Ed. 2d 500 (1973). Specifically, in *Stanley*, the Court stated:

> [W]e think that mere categorization of these films as "obscene" is insufficient justification for such a drastic invasion of personal liberties guaranteed by the First and Fourteenth Amendments. Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home. If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds.

394 U.S. at 565, 22 L.Ed. 2d at 549-50. And, in *Paris Adult Theater*, the court said: "The States have a long-recognized legitimate interest in regulating the use of obscene material in local commerce and in all places of public accommodation, as long as these regulations do not run afoul of specific constitutional prohibitions," 413 U.S. at 57, 37 L.Ed. 2d at 457.

Yet, G.S. Sec. 14-190.1 seems to criminalize the innocent sharing of a magazine by a person with his or her friend in the privacy of his home. And although it may not be popular, it is no doubt relatively common for consenting adults, including spouses, to view together what under the statute could be considered obscene material in the privacy of a home. Consequently, plaintiffs' challenge that the statute prohibits the non-commercial dissemination of obscenity in the privacy of one's home is understanda-

ble.[3] Plaintiffs' challenge is not fully supported by *Stanley*, however.

Although the right to possess obscene material may be hollow without the correlative rights to obtain or share obscene material, the holding in *Stanley* is narrow in scope and application. *Stanley* is a right to privacy case, focusing on "freedom of mind and thought and on the privacy of one's home." *United States v. Reidel*, 402 U.S. 351, 356, 28 L.Ed. 2d 813, 817 (1971). Possession of obscene material in the home is sanctioned by *Stanley*. The *Stanley* Court did not address the question whether the State can constitutionally criminalize the private communication of sexually explicit material from one consenting adult to another within the confines of the home.

My dissent on this issue is based on the accepted postulate that a law is overbroad if it does not aim specifically at the evil within the allowable area of government control. *See Thornhill v. Alabama*, 310 U.S. 88, 97, 84 L.Ed. 1093, 1100 (1940). In my view, the deletion of the words "in any public place" substantially extended the reach of the statute beyond its legitimate scope. Laudable legislative efforts to eliminate the calculated purveyors of filth for profit, *see Mishkin*, 383 U.S. at 510, 16 L.Ed. 2d at 63, and to prohibit selling and promoting the perversion of sex must be scrutinized carefully. When a statute peers into the bedrooms of married couples, for example, to close over-the-counter "Joy of Sex" type books or even clearly obscene books, the statute must yield to the Constitution which protects the people from their government.

In this case, defendants argue that the "public place" requirement was deleted "for fear that private clubs could not be prosecuted given the public place language in former G.S. Sec. 14-190.1 (a)." That goal could have been achieved by a much narrower statute — a statute that would not infringe on an adult's zone of priva-

---

3. The North Carolina Obscenity Statutes have historically excluded regulation of the kinds of private disseminations now made feloniously criminal by the amendment to G.S. Sec. 14-190.1. Like G.S. Sec. 14-190.1 prior to its amendment, former G.S. Sec. 14-189.1 contained a section which expressly excluded "disseminations not for gain, to personal associates other than children under sixteen." Today, such disseminations, occurring in the privacy of one's home, would subject the disseminator to felony prosecution.

cy when viewing obscene material in his home. In my view, the challenged statute is constitutionally overbroad.

And, were it sufficient to note, as did the majority, ante p. 558, that "the General Assembly expressly excluded from the reach of G.S. Sec. 14-190.1 any use of materials protected by the guarantees of the Constitution of the United States and of the North Carolina Constitution" then very little need would exist for the enactment of a comprehensive obscenity statute. The legislature could simply say in an all-purpose omnibus clause that "This State protects speech that is guaranteed by the federal and state constitutions." Of course, saying it is so does not make it so, and the suggestion that a citizen has to read First Amendment cases or guess about the specific conduct proscribed by statute does not square with constitutional jurisprudence.

A final, and equally incongruous if not fatal question arises: Does the challenged statute permit the anomalous result in which an individual can leave a room with obscene material in plain view (an opened book, a picture on the wall, or a playing video) and escape prosecution if a friend walks in and sees the material?

## II

### Sexual Exploitation of Minors Statute

That states have greater leeway to regulate sexually explicit material depicting minors is clear beyond cavil. *New York v. Ferber*, 458 U.S. 747, 756, 73 L.Ed. 2d 1113, 1122. Indeed, only few could decry, unabashedly, legislative efforts to eradicate the baleful impact of hard-core child pornography. As stated in *Ginsberg v. New York*, "a state may permissibly determine that, at least in some precisely delineated areas, a child . . . is not possessed of that full capacity for individual choice which is the presupposition of First Amendment guarantees." 390 U.S. 629, 649-50, 20 L.Ed. 2d 195, 209-10 (1968) (Stewart, J., concurring). That a legislature has correctly assessed community values and attitudes relating to sexual exploitation of minors does not mean, however, that the legislature has carte blanche authority to regulate all expression. Even in regulating the use of minors in sexually explicit materials, states must "suitably limit" the proscribed material to that which is pornographic and whose production is physically or psychologically harmful to minors. *See New York v. Ferber*, 458 U.S.

at 760-764, 73 L.Ed. 2d at 1124-1127. States must still draft and articulate obscenity statutes with precision so as not to infringe upon the constitutional rights of minors or adults.

In balancing the obvious need to protect children and the rights of adults to view or purchase non-obscene, yet sexually oriented, material, legislatures must not deter the legitimate exercise of free speech rights. The constitutional bounds of protected and unprotected expression must be clearly delineated, otherwise, legislatures will "reduce the adult population . . . to reading [or seeing] only what is fit for children." *Butler v. Michigan,* 352 U.S. 380, 383, 1 L.Ed. 2d 412, 414 (1957) quoted in *Bolger v. Young's Drug Products Corp.,* 463 U.S. 60, 73, 77 L.Ed. 2d 469, 482 (1983).

Significantly, the defendants admit in their pleadings that G.S. Secs. 14-190.16 and 14-190.17 make it unlawful to disseminate to adults or minors material which is not obscene, which is not harmful to minors, and which has serious literary, artistic, political or scientific merit. Nevertheless, as stated above, I concur in the majority's explicit and implicit holding that G.S. Secs. 14-190.16 and 14-190.17 require the use of a live minor to sustain a conviction thereunder and that G.S. Sec. 14-190.17's proscription against the dissemination of material that depicts minors engaged in sexual activity is not overbroad insofar as it relates to excretory functions and to "an act or condition that depicts torture, physical restraint by being fettered or bound, or flagellation of or by a person clad in undergarments or in revealing or bizarre costume." However, I believe the statute is unconstitutional since it "impermissibly bans all depictions of persons portrayed as minors in a romantic encounter that involves an apparent sexual touching," ante p. 567, and since it contains an inference of minority and fails to include a mistake of age defense.

A.   Overbreadth

The range of expressive activity falling within the import of the provision proscribing the dissemination of material that depicts minors engaged in sexual activity could be staggering. Some balletic representations of love that are danced may be proscribed, since the definition of sexual activity includes a touching, presumably with any part of the body, the clothed or unclothed buttocks of another person, or the clothed or unclothed breast of

a human female. Sexually suggestive ballroom dance scenes may be outlawed, too, even though not sexually exploitive of minors.

When a legislature seeks to protect minors by prohibiting material that is not harmful to minors, the legislature has gone too far. The admission by the defendants—the Attorney General of North Carolina and the prosecutors from various judicial districts who are authorized to enforce the law—that G.S. Secs. 14-190.16 and 14-190.17 prohibit the dissemination of material that is not harmful to minors is fatal to their claim that the statutes are not overbroad. Even given the requirement of "substantial overbreadth" when statutes regulate conduct plus speech, as opposed to pure speech, *New York v. Ferber*, 458 U.S. 747, 770, 73 L.Ed. 2d 1113, 1131, the statutes in question fall below the judicially cognizable chilling mark because the admission by the defendants points out the vagaries of prosecutorial discretion.

Admitting that a statute proscribes the dissemination of material not harmful to minors is qualitatively different from admitting that a statute prohibits the dissemination of material depicting minors engaged in sexual activity even if that material has serious literary, artistic, political, or scientific merit. If only the latter admission was involved, then the saving construction given the New York statute in *Ferber* might apply. Specifically, the *Ferber* Court said:

> While the reach of the statute is directed at the hard core of child pornography, the Court of Appeals was understandably concerned that some protected expression, ranging from medical textbooks to pictorials in the National Geographic would fall prey to the statute. How often, if ever, it may be necessary to employ children to engage in conduct clearly within the reach of Sec. 263.15 in order to produce educational, medical, or artistic works cannot be known with certainty. Yet we seriously doubt, and it has not been suggested, that these arguably impermissible applications of the statute amount to more than a tiny fraction of the materials within the statute's reach. Nor will we assume that the New York courts will widen the possibly invalid reach of the statute by giving an expansive construction to the proscription on "lewd exhibition[s] of the genitals." Under these circumstances, Sec. 263.15 is "not substantially overbroad and . . .

whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Broadrick v. Oklahoma*, 413 U.S. at 615-16, 37 L.Ed. 2d 830, 93 S.Ct. 2908.

458 U.S. at 773-74, 73 L.Ed. 2d at 1133. This quote is based on the premise that minors will be harmed; however, nothing in this quote allows a state to proscribe the dissemination of material not harmful to minors.

Plaintiffs argue that if the challenged statute "is allowed to stand, . . . numerous 'PG' and 'R' rated video-tapes . . . , including . . . 'Summer of '42,' 'Animal House,' . . . 'Blue Lagoon,' 'Endless Love,' . . . fall within the statute and are banned." It is not necessary to agree with plaintiffs to conclude that if "the State's compelling interest in protecting its youth from the debilitating psychological and emotional trauma that are attended with child pornography," ante p. 567, is advanced by banning material not harmful to minors, then the legitimate reach of the statute has no bounds; no sex education film or pictorial documentary would be sacrosanct; many books in public libraries would be shelved; and few art museums could display all their classic works.

### B.  Strict Liability: Mistake of Age No Defense

1. G.S. Secs. 14-190.16 and 14-190.17 make sexual exploitation of minors a strict liability offense by imposing criminal sanctions upon one who produces or disseminates material that depicts individuals under eighteen engaged in "sexual activities." Both statutes state that "[m]istake of age is not a defense to a prosecution." Since the age of the individual engaged in sexual activity is an essential element of the offense, the strict liability imposed by the statutes fosters, rather than avoids, the hazards of self-censorship.

In *Smith v. California*, 361 U.S. at 152, 4 L.Ed. 2d at 210, the Supreme Court reversed an obscenity conviction, stating:

[O]ur holding in *Roth* does not recognize any state power to restrict the dissemination of books which are not obscene; and we think this ordinance's strict liability feature would tend seriously to have that effect, by penalizing book sellers,

even though they had not the slightest notice of the character of the books they sold.

Similarly, in *Ginsberg*, the court stated that the constitutional requirements of scienter "rests on the necessity 'to avoid the hazards of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity'." 390 U.S. at 644, 20 L.Ed. 2d at 206, quoting *Mishkin*, 383 U.S. at 511, 16 L.Ed. 2d at 63. Of course, G.S. Secs. 14-190.16 and 14-190.17 are not "obscenity" statutes; however, the dangers of self-censorship are nevertheless present. Indeed, the chance of self-censorship looms even more prominently since neither section requires that the material be "obscene" and since both G.S. Secs. 14-190.16 and 14-190.17 impose mandatory prison sentences for violators. Because a substantial portion of the sexual expression prohibited by these sections would be entitled to full constitutional protection if a minor were not participating, a defendant's knowledge of the age of participants is especially crucial.

In my view, G.S. Secs. 14-190.16(c) and 14-190.17(c) chill the rights of those who seek to engage in legitimate, fully protected expressive activity. The risk is particularly acute for those who distribute or otherwise disseminate books, periodicals, films or video tapes because those people typically play no role in the production of the material they disseminate. How is the video tape dealer to know the ages of the actors and actresses in movies produced in Hollywood? Under G.S. Sec. 14-190.16 a distributor would be punished with mandatory imprisonment even if the producer, over whom he had no control, made an innocent mistake as to the age of the participants. As a practical matter, full compliance with G.S. Secs. 14-190.16 and 14-190.17 requires the prudent business person who knows the content and character of the material in stock to be correct in his or her assessment that no one under eighteen is depicted engaging in sexual activity, or to remove all movies involving sexual activities for fear that one of the persons might turn out to be a minor or, although over eighteen, might be playing the role of a minor. This the Constitution will not allow. In my view, the strict liability feature of the Sexual Exploitation of Minor statutes renders them unconstitutional.

### C. Inference of Minority

The inference of minority under G.S. Secs. 14-190.16 and 14-190.17 are equally infirm. The statutes read, ". . . the trier of fact may infer that a participant in sexual activity whom material through its title, text, visual representations, or otherwise represents or depicts as a minor is a minor." G.S. Sec. 14-190.16; G.S. Sec. 14-190.17. When the effect of a statute places the burden on the defendant to prove that a participant in a movie is over eighteen years of age, the defendant has been denied due process. The Due Process clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 25 L.Ed. 2d 368, 375 (1970). Moreover, since the intent of N.C. Gen. Stat. Secs. 14-190.16 and 14-190.17 is to protect children and to prosecute those who profit from child pornography, the inference unconstitutionally brings within the statute's scope films in which adult actors and actresses portray minors. A film in which adult participants engage in sexual, but not obscene, activity, is considered to be protected speech by the *Ferber* decision in which the court stated: "[I]f it were necessary for literary or artistic value, a person over the statutory age who perhaps looked younger could be utilized." 458 U.S. at 763, 73 L.Ed. 2d at 1126.

The defendants' suggestion that the statutes were not intended to cover nineteen-year-old persons, for example, portraying seventeen-year-old persons is based on their interpretation of the statute, not on the literal wording of the statutes. We should not require our citizens presciently to anticipate how a law will be interpreted and confidently to disregard the literal wording of statutes. Finally, defendants' argument that G.S. Sec. 14-190.17 "is not unlike G.S. Sec. 14-202.1 which makes it a crime to take indecent liberties with a child under 16 years of age irrespective of the defendant's knowledge of his victim's age" is inapposite. The dissemination of books, films and videos produced by others, when the disseminator has never before seen the participants, is decidedly different from the situation in which a defendant sees, can question and make judgments about a person's age.

### III

*Conclusion*

I applaud and support legislative efforts to address the particularly sensitive issues of obscenity and to eradicate the evils of sexual exploitation of minors, but I do not believe legislative purposes or ends, however praiseworthy, can be pursued by means that too broadly stifle fundamental liberties. The danger of allowing a local censor to impose his or her standard on the public is apparent. So, in responding to the felt necessities of the time and the stated or perceived needs of the public, the legislature must draft legislation whose tentacles of proscription do not exceed constitutional commands. Neither the trial court nor this Court should graft onto the challenged statutes judicial limitations that will not be apparent to the citizenry. After all, citizens should regulate their behavior according to the plain meaning of precisely drafted statutes, not according to their guesses about saving judicial construction.

Believing that the challenged statutes are unconstitutional in the particulars discussed above and that in those particulars the statutes cannot be salvaged by judicial interpolation or the all-purpose saving clause in G.S. Sec. 14-190.1(b)(4), I voice this dissent, knowing the legislature can try again.